822 P.2d 991

Vaughn KILLEEN, Sheriff of Ada County; and Ada County, a governmental entity, Petitioner–Respondent on appeal,

v.

Richard VERNON, Director, Idaho State Department of Correction, Respondent–Appellant on appeal.

No. 18766.

Supreme Court of Idaho,
Boise Term, December 1991.

Dec. 20, 1991.

Larry J. EchoHawk, Atty. Gen., Robert R. Gates, Deputy Atty. Gen., Boise, for respondent-appellant on appeal.

Greg H. Bower, Ada County Pros. Atty., Theodore E. Argyle, Deputy Pros. Atty., Boise, for petitioner-respondent on appeal.

BAKES, Chief Justice.

In March, 1990, Ada County Sheriff Vaughn Killeen filed a petition for a writ of mandate and a complaint for a declaratory judgment against Richard Vernon, Director of the Idaho State Department of Correction, seeking to force Vernon to transport state inmates housed at the Ada County jail to a state facility. The trial court held that Vernon could not delay receipt of inmates into the state system and ordered Vernon to dispatch guards to transport state prisoners to a state facility within seven days after notification from Ada County. Vernon appealed the trial court's decision. We affirm.

The Idaho State Correctional Institution (ISCI) faces a severe overcrowding problem. In 1986, in *Balla v. Idaho State Board of Correction (Balla II)*, 656 F.Supp. 1108 (D.C.Idaho 1987), *affirmed in part and reversed in part*, 869 F.2d 461 (9th Cir.1989), a United States District Court held that ISCI was overcrowded in violation of the United States Constitution and placed a population cap on all housing buildings, especially the intake center. Despite construction of new facilities in the past several years, the Department has been unable to keep up with the increases in inmates. As a result, prisoners committed to ISCI are often housed temporarily in the jails in the county in which they were convicted until space is available for them at ISCI or another state facility. The Department reimburses counties a *per diem* amount for costs in housing prisoners committed to the state.

The Ada County jail is also severely overcrowded, in part because of this backlog of state inmates. In an effort to alleviate some of this overcrowding, on March 8, 1990, Ada County Sheriff Vaughn Killeen filed a verified petition for a writ of mandate and a complaint for declaratory judgment, based on I.C. § 20-237, to compel the Director of the Department of Correction, Richard Vernon, to dispatch guards to transport state prisoners from the Ada County jail to a state facility. Vernon filed his answer to Killeen's petition on March 22, 1990, denying any legal obligation to remove the state prisoners.

Killeen moved for summary judgment on April 13, 1990; Vernon filed a cross-motion for summary judgment on May 9, 1990. After a hearing on both summary judgment motions on May 23, 1990, the district court issued a memorandum decision on

June 5, 1990, granting Killeen's request for declaratory judgment and a writ of mandate. In that decision, the district court held that Vernon, as Director of the Department of Correction, had a statutory duty, pursuant to I.C. § 20–237, to dispatch guards, within seven days of receipt of proper notice from the county, to retrieve state prisoners held at the Ada County jail.

Vernon appealed the district court decision on June 14, 1990, and filed a motion for a stay of proceedings with the district court, which denied the motion without prejudice. This Court also denied Vernon's motion for a stay on August 10, 1990.

■ On this appeal, we are faced with the following issue: Does I.C. § 20–237 allow the Director of the Idaho Department of Correction the discretion to delay receipt of state inmates housed at the Ada County jail until room is available at a state facility to accept them? We agree with the district court's interpretation of I.C. § 20–237 and hold that it does not.

I.C. § 20–237 reads in part:

**20–237. Transmission of convicted persons to penitentiary or custody of board—Notice of conviction to director—Transported by guards—Time for notice.**—When any person is convicted in any court of the state and sentenced to imprisonment and committed to the custody of the state board of correction, or sentenced to suffer the death penalty, the sheriff of the county in which such conviction shall have been had shall immediately, upon passing of sentence, notify the director that a person is in his custody.... *As soon as possible upon receipt of such notice, the director shall dispatch one or more correctional officers, as may be necessary, from the department to the place where the convicted person is detained, to secure and convey said convicted person to any department of correction facility, or other facility within the state designated by the state board of correction.* (Emphasis added.)

As the district court correctly noted, "the critical term is the phrase 'As soon as possible....'" Each side has offered a different interpretation of what this language requires. The district court very adequately explained each party's argument as follows:

> The Director argues that this phrase should be construed consistent with the practical realities of prison administration; that this phrase should mean as soon as it is possible to accept an inmate into the prison system, given the overcrowded conditions and the constraints of the federal court orders. He maintains that he is doing everything reasonably possible under this construction of the statute.

> The Sheriff contends that this critical phrase should be construed as only pertaining to the scheduling function of dispatching prison personnel to retrieve state prisoners, but does not include any discretion on the part of the Director to delay transfers because of any operational difficulties. The Sheriff refers to I.C. § 20–101, which requires that all state prisoners be committed to the custody of the state board of correction, and to the provisions of I.C. § 20–241 which spells out circumstances under which state prisoners may be confined other than within institutions maintained by the state.... The Sheriff points out that he has not entered into any agreement with the state, and in fact has specifically declined to do so.

After considering these arguments, the district court concluded:

> I fully recognize that the problem of prison overcrowding is monumental and presents no ready solution. It is clear that the ultimate solution of the problem must rest with the state. The question which must be resolved here is whether the state may transfer a portion of the burdens created to the counties, without their consent, by administrative action of the Director in delaying the acceptance of state prisoners. I think not.

> ....

> The sentence under examination in I.C. § 20–237 pertains to the dispatch of guards; giving this sentence its plain, ordinary meaning, I conclude this provi-

sion of the statute means that as soon as it is possible to dispatch a guard, the state must do so. I am persuaded that the latitude contemplated by this language extends only to the availability of personnel to handle the transfers and the logistical considerations of travelling to the various counties throughout the state, but does not include any other operational considerations of the prison system.

. . . .

I therefore grant petitioner's application for declaratory relief in that I construe the latitude inferred by the phrase "As soon as possible ...," as contained within I.C. § 20–237, to extend only to logistical and scheduling considerations of dispatching prison personnel to various jails throughout the state, but not to other operational considerations of the penitentiary.

■ We agree with the district court's conclusion. Arguably, given the arguments put forth by both sides, the language "as soon as possible," as used in I.C. § 20–237, is susceptible to different interpretations. In such a situation, when a statute contains ambiguous language, we look to the other statutes in the title or act relating to the same subject matter and read them *in para materia* in an effort to determine what the legislature intended. *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983); *Union Pacific R. Co. v. Board of Tax Appeals*, 103 Idaho 808, 654 P.2d 901 (1982) ("Statutes which are *in pari materia* are to be construed together to the end that legislative intent will be effected"); *Magnuson v. Idaho State Tax Commission*, 97 Idaho 917, 556 P.2d 1197 (1976) ("[A]ll sections of the applicable statutes should be considered and construed together to determine the intent of the legislature"); *North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County*, 94 Idaho 644, 496 P.2d 105 (1972).

In this case, the entire statutory scheme of Title 20 of the Idaho Code, entitled "State Prisons and County Jails," presupposes that state prisoners will be housed in the state prison under the control and custody of the Department of Correction and county prisoners will be housed in the county jails under the control and custody of the county sheriffs. I.C. § 20–101 mandates that all state sentenced prisoners be committed to the custody of the Board of Correction. I.C. § 20–209 requires that the Board of Correction provide care, maintenance and employment of state prisoners. I.C. § 20–237, as discussed above, requires the director to dispatch guards "as soon as possible" to transport state prisoners from a county jail to a state facility upon notice from the county. I.C. § 20–241 allows for an agreement between the state and a county to house a state prisoner within a county jail.[1] I.C. § 20–601, which describes the various functions of county jails, does not mention the housing or care of state prisoners.[2] I.C. § 20–612 provides that the "sheriff must receive all persons *commit-*

1. Vernon argues that I.C. § 20–241 allows, but does not require, the Board of Correction to enter into an agreement with the county in order to house state inmates in county facilities, and that a contract is not required in order to compel the counties to hold state inmates. However, the term "agreement" contemplates that both parties have agreed to the conditions by which they will be bound. This statute indicates that the legislature intended the counties to have the ability to choose whether to house state inmates. In the present case, up until the time Sheriff Killeen brought this suit, Ada County had no choice but to house state inmates until the Director found a space for them, which we now conclude is contrary to I.C. § 20–237.

2. 20–601. County jails—By whom kept and for what use.—The common jails in the several counties of this state are kept by the sheriffs of the counties in which they are respectively situated, and are used as follows:

1. For the detention of persons committed in order to secure their attendance as witnesses in criminal cases.

2. For the detention of persons charged with crime and committed for trial.

3. For the confinement of persons committed for contempt, or upon civil process, or by other authority of law.

4. For the confinement of persons sentenced to imprisonment therein upon a conviction for crime.

This statute does not provide that county jails are to house state inmates. Subsection 4 provides for the confinement in county jails of persons sentenced "therein," which does not include inmates sentenced to state facilities.

*ted to jail* by competent authority" and that the sheriff must furnish necessaries to "all persons *committed to the county jail.*" Again, this statute makes no mention of state inmates housed in county facilities. Finally, although not included in the same act, I.C. § 19–2703 requires that "[i]f the judgment is for imprisonment ... the defendant must *forthwith be committed to the custody of the proper officer,* and by him detained until the judgment is complied with." (Emphasis added).[3]

The foregoing statutes make clear that the legislature intended the state prison system to have the responsibility for housing state prisoners. For the county to house state prisoners for longer than a reasonable time to schedule their pickup, it must first agree to do so. If any act of the legislature is claimed to shift the responsibility for housing state prisoners to the counties, it must state so clearly and unambiguously in view of the several statutes outlined above which place that responsibility upon the Idaho State Board of Correction.

Accordingly, we uphold the district court's interpretation of I.C. § 20–237 and now conclude that the language "as soon as possible" contained within the statute "extend[s] only to logistical and scheduling considerations of dispatching prison personnel to various jails throughout the state, but not to other operational considerations of the penitentiary," as the district court held.

The district court's writ of mandamus ordering that state prisoners housed in the Ada County jail be picked up within seven days is hereby affirmed.[4]

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.

---

3. Black's Law Dictionary defines "forthwith" in part as follows: "Immediately; without delay; directly; within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch."

4. This seven-day requirement applies to Ada County. It may not be feasible for the director to dispatch guards to pick up state prisoners housed in county jails in outlying areas of the state within seven days, but they must be picked up as soon as possible.