51 P.3d 439

STATE of Idaho, Plaintiff–Respondent,

v.

Jeffery Alan CUDD, Defendant–Appellant.

No. 27002.

Court of Appeals of Idaho.

May 8, 2002.

Review Denied Aug. 8, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Jeffery Alan Cudd was convicted of aggravated assault for pointing an unloaded crossbow at a man. The principal issue presented on appeal is whether a crossbow that is unloaded constitutes a deadly weapon within the meaning of Idaho's aggravated assault statute.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 8 p.m. on an April evening, a driver was stopped at an intersection in downtown Boise waiting for the traffic light to turn green when he saw a man on the sidewalk carrying a crossbow. According to the driver's later testimony, as the man stepped into the intersection, he made eye contact with the driver. Then, when the man was approximately fourteen feet from the driver's side window, he aimed the crossbow at the driver. While the driver could not tell if the crossbow was cocked or loaded, he believed that the man's action was life-threatening. In order to escape the perceived danger, the driver sped away, driving

through the red light. He then reported the incident to police.

Shortly thereafter the police saw Cudd, with a crossbow, sitting at an outdoor table of a nearby restaurant. In response to questioning, Cudd said that he had purchased the crossbow that day at a garage sale and that he had no arrows for it because the seller had included no arrows. A search of Cudd's person and the surrounding area did not reveal any arrows. When questioned about aiming the crossbow at a driver, Cudd said that earlier that evening he had aimed the crossbow at the flashing "Don't Walk" sign across the intersection, but not at a driver. Cudd said that, since he had never fired a crossbow, he raised it to his shoulder in order to determine how to properly aim. Cudd denied making eye contact with the driver.

Despite his denials, Cudd was charged with aggravated assault, Idaho Code §§ 18–901(b), 18–905(a), for allegedly committing an assault "with a deadly weapon or instrument." At his trial the State offered no evidence that the crossbow was loaded when Cudd aimed it. A jury found Cudd guilty, and the district court sentenced Cudd to a five-year unified term of imprisonment with two years determinate. Cudd appeals the conviction, contending that the trial evidence was insufficient to support the conviction of aggravated assault because an unloaded crossbow is not a deadly weapon.

## II.

## DISCUSSION

### A. Unloaded Crossbow as a "Deadly Weapon"

Although Cudd presents the issue as one of the sufficiency of the evidence, his appeal presents a question of statutory construction, for he contends that the State's proof was inadequate only because an unloaded crossbow cannot be a deadly weapon as that term is used in I.C. § 18–905(a).

The interpretation of a statute is a legal issue over which we exercise free review. *State v. Miller,* 134 Idaho 458, 462, 4 P.3d 570, 574 (Ct.App.2000); *State v. Edghill,*

134 Idaho 218, 220, 999 P.2d 255, 257 (Ct. App.2000). In interpreting a statute, our obligation is to ascertain the legislative intent and give effect to that intent. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001). To determine intent of the legislature, we not only look to the literal words of the statute but also examine the context of those words, the public policy behind the statute, and any pertinent legislative history. *Id.* When a statute contains ambiguous terms, we not only focus on the language of that statute, but we also look to other statutes in the same title or act relating to the same subject matter and read them together, in order to discern the legislative intent. *State, Dep't of Health & Welfare ex rel. Lisby v. Lisby,* 126 Idaho 776, 779, 890 P.2d 727, 730 (1995); *Killeen v. Vernon,* 121 Idaho 94, 97, 822 P.2d 991, 994 (1991); *Smith v. Dep't of Employment,* 100 Idaho 520, 522, 602 P.2d 18, 20 (1979); *State v. Evans,* 134 Idaho 560, 564, 6 P.3d 416, 420 (Ct.App.2000).

The two statutes which together define the offense of aggravated assault as charged against Cudd are I.C. § 18–901(b) and § 18–905(a). Section 18–901(b) defines assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Section 18–905(a) provides that an assault is "aggravated," and hence a felony, if it is committed "with a deadly weapon or instrument without intent to kill."

Subsection (b) of § 18–905 specifies that "deadly weapon or instrument" includes "any firearm, though unloaded or so defective that it cannot be fired." The statute does not, however, provide any general definition of "deadly weapon or instrument" or any itemization of objects that might fall within that category other than a firearm. Judicial interpretations of the term in this statute and in the corresponding provision of Idaho's aggravated battery statute, I.C. § 18–907(b), establish that deadly weapons include such instruments as a pocket knife, *State v. Lenz,* 103 Idaho 632, 651 P.2d 566

(Ct.App.1982); a sock weighted with batteries, *State v. Jones,* 109 Idaho 31, 704 P.2d 363 (Ct.App.1985); and a sulphur gun, *State v. Matthews,* 118 Idaho 659, 798 P.2d 941 (Ct. App.1990). An unloaded crossbow, Cudd argues, cannot fall into this category unless it is loaded because arrows are necessary in order for the instrument to be capable of inflicting serious bodily injury.

In our view, this question of statutory interpretation turns upon whether the legislature intended that, to be a deadly weapon that will support a charge of aggravated assault, an instrument must appear deadly from the standpoint of the perpetrator or from the standpoint of the victim. From Cudd's standpoint, because he knew it to be unloaded, the crossbow was not an instrument capable of causing grave injury when he aimed it. Thus, it could be said that although Cudd intentionally aimed the crossbow at the victim in a threatening manner, his conduct was less culpable than that of a person who makes a threat with a weapon while knowing it can cause great injury. The victim, on the other hand, could not tell whether the bow was loaded, but he believed that it could be and fled in fear for his safety. For the victim then, the experience was as distressing as it would have been if the crossbow had, in fact, been loaded. Therefore, this question of whether it is the defendant's knowledge or the victim's perception that should be determinative is at the heart of our inquiry into legislative intent.

We conclude that the legislative policy expressed within §§ 18–901 and 18–905 evidences an intent that it is the *victim's* reasonable perception that is dispositive. First, in § 18–901(b), the definition of assault encompasses a requirement that the threat to do violence be coupled with "an *apparent* ability to do so, and doing some act which creates a *well-founded fear in such other person* that such violence is imminent." Thus, in defining assault, the legislature focused upon the effect of the perpetrator's conduct upon the perception and emotion of the victim. Further, the legislature's expression in 18–905(d) that "deadly weapon or instrument" includes an unloaded or inoperable firearm indicates a legislative intent that,

even if the instrument is not actually capable of inflicting a grievous injury, it will be considered a deadly weapon if it would be so perceived by a victim. Hence, if the victim reasonably believed it to be so, an unloaded crossbow may be a deadly weapon as that term is used in § 18–905(a).

In this case, there was evidence that Cudd threatened the victim with the crossbow while the victim looked on in semi-darkness from a distance of fourteen feet. On this evidence, the jury could find that it was reasonable for the victim to believe that the crossbow was loaded and able to cause injury in the manner for which it was designed. Therefore, the State's evidence is sufficient to support the jury's verdict that the victim was assaulted with a deadly weapon or instrument.

## B. Sentence

Cudd also challenges his unified five-year sentence with a two-year minimum term, contending that it is excessive. Our standards for appellate review of a sentence are well settled. When a sentence is imposed within the maximum permitted for the offense, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse if it is shown to be unreasonable when measured against the sentencing goals of protecting society, deterrence, rehabilitation or retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). On review of a sentence, we conduct an independent examination of the record, focusing upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

Cudd has a criminal history that includes at least seven felony convictions and eleven misdemeanor convictions. Many of these were crimes of violence, including voluntary manslaughter, aggravated battery, aggravated assault, and misdemeanor batteries and assaults. At the time of sentencing, he was awaiting trial on another felony assault charge. Cudd's assertion that he is amena-

ble to rehabilitation is belied by his lengthy history of repeated crime.

Cudd argues that he is infected with Hepatitis C, which could lead to an early death, and that this health factor should have led the district court to impose a lesser sentence. The only medical evidence in the record, however, indicates that although a test showed that Cudd had been exposed to the Hepatitis C virus, that did not mean that the virus is active in Cudd, and he was not experiencing any symptoms that would indicate an active virus. The record thus does not support his assertion of a serious illness.

On a thorough review of the record, and taking into account both the nature of Cudd's offense and his character as revealed through his past conduct, we are not convinced that the sentence imposed by the district court is excessive.

## III.

### CONCLUSION

Because we conclude that an unloaded crossbow can constitute a deadly weapon, as found by the jury, for purposes of the aggravated assault statute, and because Cudd's sentence has not been shown to be unduly harsh, the judgment of conviction and sentence are affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.