879 P.2d 592

Margaret E. NELSON, Claimant–
Respondent–Cross–Appellant,

v.

PONSNESS–WARREN IDGAS ENTER-
PRISES, Employer, and Argonaut
Northwest Insurance Company, Defen-
dants–Appellants–Cross Respondents.

No. 20656.

Supreme Court of Idaho,
Boise, January 1994 Term.

Aug. 4, 1994.

**130**

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellants. John W. Barrett argued.

Frederick G. Loats, Coeur d'Alene, for respondent.

McDEVITT, Chief Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

The record in this case indicates that since 1980 claimant Margaret Nelson (Nelson) occasionally has suffered numbness and tingling in both of her hands. Nelson was diagnosed with carpal tunnel syndrome and possible thoracic outlet syndrome in 1980. She refused to undergo surgery to relieve the carpal tunnel syndrome. Nelson continued to intermittently experience numbness and tingling in her hands until October 1988, when she began working on an assembly line at Ponsness–Warren Idgas Enterprises (Ponsness–Warren). Her job required repetitive tightening of screws and thus twisting and turning of her hands throughout the day. Soon after commencing work at Ponsness–Warren, Nelson's symptoms of pain and numbness worsened to the point that she acceded to carpal tunnel release surgery on both hands in May 1989. Dr. J.K. Pike, Nelson's treating physician, believed that Nelson suffered from a work aggravated condition. Although she experienced pain in her left hand after the surgery, Nelson briefly returned to work at Ponsness–Warren in July 1989.

Throughout 1989, Nelson continued to complain of pain in her left arm and shoulder, although Dr. Pike believed, as of October 1989, that her carpal tunnel syndrome was stable and resolved and that she should not be rated as permanently impaired from the carpal tunnel syndrome. Dr. Pike noted that Nelson still suffered from other problems in her arms and shoulders and that these problems precluded Nelson from working at jobs requiring heavy use of her left arm. A panel of physicians, hired by Ponsness–Warren, examined Nelson in March 1990 and likewise concluded that she suffered no permanent partial impairment from carpal tunnel syndrome. In contrast, another physician, Dr. James Brinkman, concluded that as of May 31, 1990, Nelson still suffered from residual carpal tunnel symptoms. On September 28, 1990, Dr. Brinkman concluded that Nelson had suffered 10% and 20% impairment of the upper extremity, apparently from carpal tunnel syndrome.

The referee for the Industrial Commission conducted a hearing on July 26, 1991. On February 16, 1993, the Commission adopted the referee's Findings of Fact, Conclusions of Law, and Proposed Order, and ruled that (1) Nelson's possible thoracic outlet syndrome and shoulder problems were not sustained through her employment with Ponsness–Warren; (2) Nelson's employment with Ponsness–Warren had aggravated her preexisting condition of carpal tunnel syndrome; and (3) such aggravation was an occupational disease arising out of her employment with Ponsness–Warren, and was compensable despite the fact that no industrial "accident" caused the aggravation.[1]

Apparently striking a compromise between the opinion of Dr. Brinkman and the employer's panel of physicians relating to Nelson's permanent impairment, the Commission awarded Nelson a 10% impairment rating for

---

1. An occupational disease is defined in the Workers' Compensation Act as follows:
   **I.C. § 72–102**
   (18) "Occupational Diseases"
   (a) "Occupational disease" means a disease due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the trade, occupation, process, or employment.
   (b) "Contracted" and "incurred," when referring to an occupational disease, shall be deemed the equivalent of the term "arising out of and in the course of" employment.

the aggravation of her preexisting condition. The Commission found no disability in excess of impairment and did not apportion any of Nelson's impairment to her preexisting condition.

Both parties submitted Motions to Reconsider. Nelson sought compensation for her shoulder problems, and Ponsness–Warren contended that (a) Nelson did not suffer an occupational disease, (b) Nelson did not suffer an accident that aggravated her preexisting condition, and (c) Nelson was not permanently impaired. On reconsideration, the Commission again denied compensation for Nelson's shoulder condition and reaffirmed its decision to compensate Nelson for the aggravation of her carpal tunnel syndrome. The Commission found that Nelson's preexisting condition was asymptomatic before she began to work at Ponsness–Warren; consequently, her carpal tunnel syndrome arose in the course of her employment there and was compensable as an occupational disease. Even if her condition were not asymptomatic, the Commission found that an accident, in the form of repetitive trauma to her hands, had aggravated her preexisting condition, and thus she should be compensated pursuant to our decision in *Nycum v. Triangle Dairy Co.*, 109 Idaho 858, 712 P.2d 559 (1985).

Ponsness–Warren appeals to this Court, contending that: (1) the Commission erred in finding Nelson's claim compensable as an occupational disease resulting from repetitive trauma or as the result of an accident; and (2) the Commission erred in awarding Nelson 10% permanent partial impairment.

## ANALYSIS

### I.

### NELSON'S CARPAL TUNNEL SYNDROME IN 1988 AND 1989 WAS AN AGGRAVATION OF A PREEXISTING CONDITION

██ Although the Commission found that Nelson had suffered some numbness and tingling before she began employment at Ponsness–Warren, it found on reconsideration that her condition was compensable un-

der the Workers' Compensation Act because "there is no question that [Nelson] was asymptomatic before she began working for [Ponsness–Warren] in 1989 [sic]." In our view, this finding directly conflicts with the evidence that was before the Commission, and is not justified by our prior case law. This Court will overturn the Commission's findings of fact when such findings are unsupported by substantial competent evidence. *Brooks v. Standard Fire Ins. Co.*, 117 Idaho 1066, 1070, 793 P.2d 1238, 1242 (1990). Nelson testified that she intermittently suffered numbness and tingling in her hands between 1980 and 1989, depending in part on what types of activities she performed. The panel of physicians who examined Nelson in March of 1989 noted that Nelson had suffered varying levels of carpal tunnel syndrome symptoms for the last ten years. Finally, in its first decision, the Commission acknowledged that Nelson suffered from ongoing symptoms of carpal tunnel syndrome between 1980 and 1988. Therefore, contrary to the Commission's finding in its decision on reconsideration, it is clear that Nelson's preexisting condition was not asymptomatic or dormant.

██ The Commission also erred in ruling that the supposed "latency" of Nelson's preexisting condition before 1988 caused her carpal tunnel syndrome to become a "new condition." Since Nelson's carpal tunnel syndrome manifested itself prior to her employment at Ponsness–Warren, it was not "latent" or "asymptomatic." A "latent" or "asymptomatic" preexisting condition is one that has never manifested itself. *See Jones v. State Industrial Special Indem. Fund*, 104 Idaho 337, 338, 659 P.2d 91, 92 (1983). Furthermore, whether or not a preexisting condition was asymptomatic is irrelevant for purposes of determining an employee's compensation benefits. Rather, the latency of a preexisting condition is relevant only to the liability of the Industrial Special Indemnity Fund for any disability resulting from the preexisting condition. *See Id.*

We therefore reverse the portions of the Commission's decision on reconsideration which conclude that Nelson's carpal tunnel syndrome was asymptomatic prior to 1988 or a "new condition" after 1988 constituting an

"occupational disease," and affirm the portion which concludes that Nelson, during her employment at Ponsness–Warren, suffered an aggravation of her preexisting condition of carpal tunnel syndrome.

## II.

### NELSON IS NOT ENTITLED TO COMPENSATION FOR THE AGGRAVATION OF HER CARPAL TUNNEL SYNDROME BECAUSE SHE HAS FAILED TO SHOW THAT IT WAS PRECIPITATED BY AN ACCIDENT

In keeping with the trend of courts across the country, this Court has long held that an employee may be compensated for the aggravation or acceleration of his or her preexisting condition. *E.g., Woodbury v. Arata Fruit Co.,* 64 Idaho 227, 130 P.2d 870 (1942); *Wynn v. J.R. Simplot Co.,* 105 Idaho 102, 666 P.2d 629 (1983). Ponsness–Warren argues that in this case, Nelson should not be awarded compensation benefits because she did not prove that an "accident" aggravated the preexisting carpal tunnel syndrome. We agree.

In *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 712 P.2d 559 (1985), the claimant raised for the first time on appeal the precise claim that Nelson raises here. Nycum alleged that his underlying disease (diabetes-induced flexor tenosynovitis) was aggravated by his employment with Triangle Dairy Co., over a period of several months, to render Nycum disabled. *Nycum,* 109 Idaho at 862, 712 P.2d at 563. In response to Nycum's claim this Court correctly stated that Idaho case law recognizes compensability for aggravation of an underlying disease, but *only* if such aggravation results from an industrial accident. *Id.*

■ We based our statement in *Nycum* principally upon *Carlson v. Batts,* 69 Idaho 456, 458, 207 P.2d 1023, 1023–24 (1949), where we said that "[t]he question as to whether or not the evidence sustains the finding of an aggravation of pre-existing bodily weakness, infirmity or susceptibility, becomes relatively unimportant if the facts are not sufficient to establish that the injury was the result of an 'accident.'" In 1949, "accident" was defined in Idaho's workers' compensation law as "an unexpected, undesigned, and unlooked for mishap, or untoward event, *happening suddenly* and connected with the industry in which it occurs, and which can be *definitely* located as to time when and place where it occurred, causing an injury, as defined in this law." (emphasis added). *See Carlson v. Batts,* 69 Idaho at 458, 207 P.2d at 1024. The workers' compensation law was significantly amended sometime prior to *Nycum,* and now defines accident as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be *reasonably* located as to time when and place where it occurred, causing an injury." Idaho Code § 72–102(15)(b) (emphasis added). Thus, an accident no longer has to "happen suddenly" nor be definitely located as to time when and place where it occurred. *See Bowman v. Twin Falls Constr. Co.,* 99 Idaho 312, 321, 581 P.2d 770, 779 (1978). However, a claimant still bears the burden of proving that an injury-causing accident occurred, by proving that an "unexpected, undesigned and unlooked for mishap, or untoward event" took place. *Johnson v. Bennett Lumber Co.,* 115 Idaho 241, 244, 766 P.2d 711, 714 (1988); *see also Vernon v. Omark Indus.,* 115 Idaho 486, 489, 767 P.2d 1261, 1264 (1989) (claimant must prove suffered accident as defined in I.C. § 72–102(15)(b)).

■ Although I.C. § 72–102(15)(b) effectively softens the previously rigid definition of accident, it does not support the Commission's finding that Nelson suffered a compensable accident in this case. The Commission rejected Ponsness–Warren's position that an accident did not occur, concluding that *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 712 P.2d 559 (1985), implicitly overruled *Wynn v. J.R. Simplot Co.,* 105 Idaho 102, 666 P.2d 629 (1983). The *Nycum* court did not overrule *Wynn.* To the contrary, both cases reiterate the requirement that an " 'unexpected, undesigned, unlooked-for or untoward event or mishap, connected with or growing out of the employment, takes place.' " *Wynn,* 105 Idaho at 105, 666 P.2d at 632 (quoting *Hammond v. Kootenai County,* 91 Idaho 208, 209, 419 P.2d 209, 210

(1966)). *See also Hazen v. General Store,* 111 Idaho 972, 974, 729 P.2d 1035, 1037 (1986) (interprets *Wynn* to require claimant to reasonably locate accident as to time when and place where occurred rather than pinpoint exact time and place of accident). The *Wynn* court acknowledged that "[i]t is enough to note that claimant here, as indicated by the medical evidence, suffered his injury at a particular time, at a particular place, while engaged in his normal and ordinary work for his employer." *Id.* at 104, 666 P.2d at 631. Nelson has failed to show that her carpal tunnel syndrome was aggravated by an "unexpected, undesigned, and unlooked for mishap, or untoward event," reasonably identifiable as to time when and place where it occurred.

■ The Commission relies on *Brooks v. Standard Fire Ins. Co.,* 117 Idaho 1066, 793 P.2d 1238 (1990), to support its conclusion that a series of mini-traumas caused by the repetitive motions of Nelson's job constitutes an identifiable accident for purposes of compensating the aggravation of the carpal tunnel syndrome. In *Brooks,* this Court held that there was substantial and competent evidence to support the industrial commission's finding that the claimant had suffered an accident, where expert testimony revealed that claimant withstood a series of stress fractures aggravating a previously fractured wrist. *Brooks,* 117 Idaho at 1071, 793 P.2d at 1242. Although we found in *Brooks* that the claimant had suffered an accident, we do not hereby endorse the theory that a series of mini-traumas constitutes an accident. Unless a claimant seeking compensation for the aggravation of a preexisting condition proves that an accident as defined in I.C. § 72–102(15)(b), aggravated the preexisting condition, as Nelson has failed to do in this case, the claimant is not entitled to compensation.

Therefore, we hold that since Nelson's injury cannot be attributed to an accident reasonably located as to time when and place where it occurred, the aggravation of Nelson's carpal tunnel syndrome is not compensable.

## CONCLUSION

■ We reverse the Industrial Commission. Respondent requests attorney fees on appeal but fails to cite any statutory authority for such an award. We therefore award no attorney fees on appeal.

Costs on appeal to appellant.

JOHNSON and TROUT, JJ., concur.

BISTLINE, Justice, joined by SILAK, J., concurring in Part I and dissenting in Part II:

I must respectfully dissent from Part II of the Court's decision and judgment.

I first question the requirement that when an employee's preexisting condition is aggravated by his or her employment to the extent that it becomes an occupational disease, he or she must prove that the aggravation stemmed from an "accident." Neither *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 712 P.2d 559 (1985), nor *Carlson v. Batts,* 69 Idaho 456, 207 P.2d 1023 (1949), stands for that precise proposition. In *Carlson v. Batts,* the employee suffered an injury, not an occupational disease. Likewise, the Commission found and this Court affirmed that the employee in *Nycum* did not suffer an occupational disease. The inquiry in both cases, therefore, concerned the cause of the claimants' injuries, and whether the claimants had carried their burden of proof as to an "accident."

By defining occupational diseases as certain conditions that arise over a period of time, out of and in the course of employment and which can disable employees, the Worker's Compensation Act distinguishes occupational diseases from accident-induced injuries. I.C. § 72–102(18)(b). This point is critical. An employee who, for the first time, is disabled by an occupational disease does not have to prove that an "accident" caused the disease or disablement. Today's decision, however, eliminates the distinction between "injury" and "occupational disease" for those employees whose preexisting occupational diseases re-manifest themselves in the course of their employment. Those employees now must prove that the second manifestation of their occupational diseases was ag-

gravated by an "accident," a burden which is illogical in the context of most occupational diseases and which therefore was expressly eliminated by the 1939 revisions to the Worker's Compensation Act. *See Nycum v. Triangle Dairy Co.,* 109 Idaho at 860, 712 P.2d at 561 (because the "courts were constantly straining the definition of 'accident' to permit compensation for *diseases* genuinely contracted as a result of employment ... the legislature, in 1939, amended the workmen's compensation law to specifically provide a right to compensation for disablement resulting from occupational disease.") (emphasis in original).

If, however, the *Nycum* requirement of an "accident" is indeed to be imposed on employees whose preexisting conditions have been aggravated to the point of occupational diseases, then this Court should interpret "accident" in a manner that is consistent with precedent and which accurately reflects the realities of the occupational diseases that arise out of and in the course of the modern, increasingly sedentary, work place.

Idaho Code § 72–102(15)(b) defines accident as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be *reasonably* located as to time when and place where it occurred, causing an injury." (emphasis added). In *Wynn v. J.R. Simplot Co.,* 105 Idaho 102, 666 P.2d 629 (1983), this Court ruled in favor of a claimant whose spine had suffered "repetitive trauma." *Wynn,* 105 Idaho at 104, 666 P.2d at 631. Similarly, this Court, in *Brooks v. Standard Fire Ins. Co.,* 117 Idaho 1066, 793 P.2d 1238 (1990), ruled that a series of minor stress fractures, which occurred over a period of several months in the claimant's wrist, supported the Industrial Commission's finding of an "accident." *Brooks,* 117 Idaho at 1071, 793 P.2d at 1243.

Today, however, the Court holds that Nelson failed to carry her burden of an "accident," even though the aggravation of her *occupational* disease of carpal tunnel syndrome occurred in substantially less time than did the aggravation in *Brooks.* I can discern no apparent reason for the different results between these cases, other than this Court's concern that relying on *Brooks* will eventually obligate employers to compensate every ache and pain suffered by their employees.

The "slippery slope" argument is invalid here, however, because Nelson's case presents only issues relating to the aggravation of carpal tunnel syndrome, a disease that by its nature is not induced by a specific "accident." I submit that the Industrial Commission is well able to determine whether the repetitive motions performed by a claimant are "reasonably located" enough to constitute an "accident" for purposes of the aggravation of preexisting carpal tunnel syndrome, and that this Court should not second-guess such determinations unless they are unsupported by substantial and competent evidence. In the present case, substantial and competent evidence as to Nelson's employment tasks supports the Commission's finding.

Accordingly, I would affirm the Commission's conclusion that Nelson is entitled to compensation for the aggravation of her carpal tunnel syndrome, which aggravation arose out of and in the course of her employment with Ponsness–Warren. I would also affirm the Commission's award to Nelson of permanent partial impairment.