953 P.2d 989

**Jose Luis REYES, Claimant–Appellant,**

v.

**KIT MANUFACTURING COMPANY, Self–Insured Employer–Respondent.**

No. 23194.

Supreme Court of Idaho, Boise, February 1998 Term.

March 20, 1998.

Byron Meredith, Caldwell, for appellant.

Michael E. Powers, Boise, for respondent.

JOHNSON, Justice.

This is a workers' compensation case. We conclude that the Industrial Commission (the Commission) correctly denied benefits to the employee. In doing so, we reaffirm the decision of the Court in *Nelson v. Ponsness–Warren Idgas Enterprises*, 126 Idaho 129, 879 P.2d 592 (1994).

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Jose Luis Reyes (Reyes) began complaining of swelling, pain, and numbness in both hands and wrists in 1980. He was thereafter diagnosed with bilateral carpal tunnel syndrome (CTS) in January 1987, and underwent left-sided CTS release surgery in December 1989. Reyes became employed by Kit Manufacturing Company (Kit) in October 1994 as a laborer installing floors in trailers. His job at Kit required him constantly to use a staple gun, hammer, and drill. Less than a month after beginning his employment with Kit, Reyes complained to his physician about CTS problems in his right arm, wrist, and hand. Reyes is right-handed. The physician diagnosed that Reyes was suffering from right-sided CTS which was aggravated by his job duties at Kit and required a release surgery.

Reyes filed a claim for workers' compensation benefits. Following a hearing, the referee concluded that Reyes' CTS was not compensable as it was preexisting and the aggravation was not the result of an "accident" as defined by section 72–102(15)(b) (current version at section 72–102(17)(b)) of the Idaho Code (I.C.) and *Nelson*. The Commission adopted the referee's findings of fact and conclusions of law. Reyes appealed to this Court arguing that *Nelson* should be overruled. The case was temporarily remanded to the Commission for additional findings of fact. On remand, the Commis-

sion determined that Reyes' CTS was incurred in his employment with Kit but again denied the claim. This appeal then proceeded.

## II.

### REYES IS NOT ENTITLED TO COMPENSATION BECAUSE HIS PREEXISTING CONDITION WAS NOT AGGRAVATED BY AN ACCIDENT.

■ Reyes asserts that he is entitled to compensation for his CTS without being required to prove that this preexisting condition was aggravated by an accident. We disagree.

The result in this case is controlled by *Nelson*. In both this case and *Nelson*, the following circumstances exist: (1) the claimant had CTS prior to the employment out of which the claim for workers' compensation arose; (2) the claimant was at least temporarily totally incapacitated by CTS that was incurred in the employment out of which the claim for compensation arose; and (3) the claimant failed to prove that an accident aggravated the CTS causing the incapacity. In *Nelson*, the Court ruled: "Unless a claimant seeking compensation for the aggravation of a preexisting condition proves that an accident as defined in I.C. § 72–102(15)(b), aggravated the preexisting condition, ... the claimant is not entitled to compensation." 126 Idaho at 133, 879 P.2d at 596. Therefore, the Commission correctly denied Reyes compensation for the aggravation of his CTS.

■ Reyes invites us to overrule *Nelson*. We decline to do so. "[T]he rule of stare decisis dictates that we follow [controlling precedent], unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990). The correctness of *Nelson* can be determined by a reading of the applicable statutes and their history.

I.C. § 72–437 provides the basis for compensation for an occupational disease:

When an employee of an employer suffers an occupational disease and is thereby disabled from performing [the employee's] work in the last occupation in which [the employee] was injuriously exposed to the hazards of such disease, or dies as a result of such disease, and the disease was due to the nature of an occupation or process in which [the employee] was employed within the period previous to [the employee's] disablement as hereinafter limited, the employee, or, in case of [the employee's] death, [the employee's] dependents shall be entitled to compensation.

I.C. § 72–439 limits the liability of an employer for compensation due to an occupational disease, other than silicosis, to cases where the disease is actually incurred in the employee's employment and where disablement results within one year after the last injurious exposure to the disease in the employment.

I.C. § 72–102(18)(c) (current version at I.C. § 72–102(21)(c)) defines disablement, except in the case of silicosis, as "the event of an employee's becoming actually and totally incapacitated because of an occupational disease from performing [the employee's] work in the last occupation in which injuriously exposed to the hazards of such disease."

Reyes contends that "a worker *who has been injuriously exposed* to an occupational disease in successive employments is covered if he is disabled from performing his work for the last of these employers." (Reyes' emphasis). From this, Reyes argues that the language of I.C. § 72–437 "reveals an intent to cover aggravation of preexisting conditions." As we read these statutes, they are directed to employment of an employee by one employer. This is borne out by the reference in I.C. § 72–437 to "an employee of an employer." Also, I.C. § 72–439 refers to "[a]n employer" not being liable unless disablement or death results within one year in case of any occupational disease, other than silicosis, "after the last injurious exposure to such disease *in such employment*." (emphasis added). In defining occupational disease, I.C. § 72–102(18)(a) (current version at I.C. § 72–102(21)(a)) refers to "a disease due to the nature of *an employment*." (emphasis

added). Nothing in these statutes indicates an intent to require that an employer who employs an employee who comes to the employment with a preexisting occupational disease will be liable for compensation if the employee is disabled by the occupational disease due to an injurious exposure in the new employment.

The essence of *Nelson* is that a preexisting occupational disease is just like any other preexisting condition. For a current employer to be liable for the aggravation of the condition, there must be an accident. To read the occupational disease statutes as changing the rule when the preexisting condition is an occupational disease is to rewrite these statutes. We are not permitted to do so.

Our view is also supported by the history of the occupational disease statutes. Prior to the recodification of the workers' compensation law in 1971, the statutes concerning occupational disease, as enacted in 1939, included the following (the "last employer liable" statute):

43-2107. *LAST EMPLOYER LIABLE*—AMOUNT OF COMPENSATION. Where compensation is payable for an occupational disease, *the employer in whose employment the employee was last injuriously exposed to the hazards of such disease shall be liable therefor;* the amount of the compensation shall be based upon the average weekly wages (as defined in the workmen's compensation law) of the employee when last so exposed under such employer; and the notice of disability and claim for compensation shall be given and made to such employer; provided, however, that the maximum compensation to be allowed for disability, or death, or both, on account of any occupational disease, other than silicosis, shall be $5,000.00, until a transitory period of six years from the date when this chapter becomes effective shall have expired, and thereafter the total aggregate of such compensation and benefits shall be as provided in the workmen's compensation law; provided further that in case of silicosis the only employer liable shall be the last employer in whose employment the employee was last injuriously

exposed to the hazards of the disease during a period of sixty days or more after the effective date of this chapter.

1939 Idaho Sess. Laws, Ch. 161, § 2, 286, 290 (emphasis added). The "last employer liable" statute continued in force unchanged, although recodified as I.C. § 72–1207, until 1965, when it was amended to read, as follows:

72–1207. *LAST EMPLOYER LIABLE*—AMOUNT OF COMPENSATION.—Except for silicosis cases, where compensation is payable for an occupational disease, *the employer in whose employment the employee was last injuriously exposed to the hazards of such disease shall be liable therefor;* the amount of the compensation shall be based upon the average weekly wages (as defined in the Workmen's Compensation Law) of the employee when last so exposed under such employer; and the notice of disability and claim for compensation shall be given and made to such employer; provided, however, that the maximum compensation to be allowed for disability, or death, or both, on account of any occupational disease, including silicosis, shall be as provided in the Workmen's Compensation Law.

1965 Idaho Sess. Laws, Ch. 152, § 1, 292, 293 (emphasis added).

In the recodification of the workers' compensation law in 1971, the legislature eliminated the "last employer liable" statute and any reference to the liability of the employee's last employer. This deletion from the statutes governing compensation for occupational disease indicates the intent of the legislature to change the liability for occupational disease. *Dohl v. PSF Indus., Inc.*, 127 Idaho 232, 237, 899 P.2d 445, 450 (1995). The retention by the legislature in the 1971 recodification of what are now I.C. § 72–437 and I.C. § 72–439 does not convince us that our reading of the legislature's intent is incorrect. The 1939 legislation establishing compensation for occupational diseases contained essentially the same provisions that are now contained in I.C. § 72–437. 1939 Idaho Sess. Laws, Ch. 161, § 2, at 287–88. The reference in I.C. § 72–437 to an employee being "disabled from performing [the employee's] work in the last occupation in which

[the employee] was injuriously exposed" does not mean that the last employer is liable for the disability due to an employee's preexisting occupational disease. If it did, there would have been no reason for the legislature to have included both this provision and the "last employer liable" statute in the 1939 enactment of the occupational disease law. Both of these statutes were retained until the recodification in 1971. The same is true of the reference in I.C. § 72–439 to "the last injurious exposure to such disease." This also was contained in the 1939 version of the statutes concerning occupational disease. 1939 Idaho Sess. Laws, Ch. 161, § 2, at 290–91.

In searching for a rationale for the legislature's elimination of the "last employer liable" statute from the occupational disease law, we have discovered only fragmentary evidence of why this occurred. In the October 5, 1970 "LIMITED COMPARATIVE STUDY OF IDAHO'S WORKMEN'S COMPENSATION LAW AND OCCUPATIONAL DISEASE COMPENSATION LAW WITH THE PROPOSED WORKMEN'S COMPENSATION AND REHABILITATION LAW (4–7–70 draft)" prepared by E.B. Smith, former Chief Justice of this Court acting under contract with the Legislative Council, for the Legislative Council Committee on Workmen's Compensation, the following statement occurs concerning the proposed continuation of the "last employer liable" statute:

THE PROPOSED LAW

. . .

72–436 LAST EMPLOYER LIABLE—AMOUNT OF COMPENSATION
(occupational diseases)
Provides that where compensation is payable for an occupational disease, the last employer in whose employment the employee was last injuriously exposed to the hazards of such disease, shall be liable. Comment of AFL–CIO: The section places entire compensation burden on the last employer, which might make employers hesitant about hiring persons suspected of previous exposure to occupational disease. Suggests a system of apportionment among the employers involved.

The December 8, 1970 proposed draft of the Legislative Council Committee on Work-

men's Compensation did not include the "last employer liable" statute. We conclude that the committee must have decided that it was inappropriate to continue the "last employer liable" statute and that in recodifying the workers' compensation law, the legislature agreed.

Therefore, we conclude that by the deletion of the "last employer liable" statute in the 1971 recodification of the workers' compensation laws, the legislature intended to eliminate this liability and treat occupational diseases as any other preexisting condition when aggravation occurred in subsequent employment. This is the conclusion the Court reached in *Nelson*, although the rationale was not explicitly stated.

### III.

### CONCLUSION

We affirm the decision of the Commission denying Reyes compensation.

We award costs on appeal to Kit.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.