17 P.3d 272

**Richard McGEE, Claimant–Appellant,**

v.

**J.D. LUMBER, Employer and Liberty Northwest Insurance Corporation, Surety, Defendants–Respondents.**

No. 25620.

Supreme Court of Idaho,
Coeur d'Alene, September 2000 Term.

Dec. 22, 2000.

Rehearing Denied Jan. 12, 2001.

Verby Law Office, Sandpoint, for appellant. Steven C. Verby argued.

E. Scott Harmon, Boise, for respondents.

KIDWELL, Justice.

Richard McGee appeals from an order of the Industrial Commission finding that his January 1992 injury reached medical stability in March of 1992, that McGee experienced additional non-compensable episodes of increased pain in May and July 1994, and that neither of McGee's former employers were responsible for benefits dating back to May of 1994 because McGee did not suffer from an industrial accident.

## I.

## FACTS AND PROCEDURAL HISTORY

The claimant, Richard McGee, began employment with John Erdman Logging (Erdman) in January of 1988 as a skidder operator. He continued employment with Erdman until July 1991, when he left Erdman's employment for personal reasons. While employed at Erdman, McGee was exposed to

excessive body vibration while performing work as a skidder operator.

McGee went to work for J.D. Lumber (J.D.) in August of 1991. On January 20, 1992, McGee was working as a bander. On that day, McGee suffered an injury to his lower back when he slipped and fell on an icy snow ramp while exiting a lumber car. McGee was twenty-eight years old at the time of this accident.

Dr. Fowler, the company physician for J.D., treated McGee for this injury and diagnosed strain/sprain of the lumbosacral spine. Dr. Fowler treated McGee with a short period of bed rest and prescription medication. The results of an MRI conducted in February 1992 indicated a mildly bulging disc at L5–S1 which minimally deformed the "thecal sac" and caused slight posterior displacement of the S1 nerve root. Mild degenerative disease in the facets throughout the lower lumbar spine was also found.

In February 1992, McGee returned to work in a light duty position at J.D. and on March 12, 1992, McGee obtained a complete work release from Dr. Fowler. McGee told Dr. Fowler in his March visit that he wanted a complete release and was in no pain. McGee continued to work at J.D., but claims that the entire time he worked there, he experienced intermittent problems with his lower back. In spite of these problems, McGee did not seek additional medical treatment.

McGee terminated his employment with J.D. on May 20, 1993, and immediately thereafter returned to work for Erdman as a skidder operator. Operation of the skidder required McGee to sit in a twisted position and to remain on the skidder throughout the work day.

On the morning of May 4, 1994, McGee woke up experiencing extreme back pain and subsequently sought treatment for his lower back. This was the first time since 1992 that McGee had sought treatment. On July 8, 1994, McGee experienced further back symptoms while walking from his truck to the skidder. Following these episodes, McGee did not return to work and has not worked since 1994.

McGee attempted suicide in July of 1996. He developed vertigo and headaches in October of 1996, and was experiencing daily headaches to some degree by December of 1997. McGee was diagnosed in September of 1998 with severe depression and adjustment problems.

McGee filed two worker's compensation complaints on February 16, 1995. Both complaints requested benefits for total temporary disability, permanent partial impairment, permanent partial disability, and medical benefits. J.D. and Liberty Northwest Insurance Company were named as the employer/insurer in one complaint. The cause of the injury in the J.D. complaint stated, "Claimant was banding lumber on flat car, slipped and stepped down off railroad flat car and injured his back." The other complaint named John Erdman Logging and Associated Loggers Exchange as the employer/insurer. The Erdman complaint attributed the injury to McGee's operation of the skidder. This complaint noted, "back pain became increasingly worse as skidder continually struck objects and bumped."

The two complaints were consolidated on August 10, 1995, by Referee Amy Howe. On September 4, 1996, McGee filed a motion to bifurcate the hearing, wherein McGee requested the Commission to initially determine the issue of liability. McGee's main reason for requesting the bifurcation involved the fact that McGee was participating in a treatment program and felt that a more accurate assessment of his physical functioning level could be made after he had completed the program. An order was issued on September 12, 1996, bifurcating the issues and setting the hearing for December 10, 1996, to decide "whether claimant's current condition [was] causally related to the accidents and injuries of January 20, 1994, and/or May 1, 1994."

Various testimony was presented at a hearing held on December 10, 1996, in order to determine the liability issue. At this hearing, the attorney for J.D., Mr. Harmon, argued that any medical treatment McGee sought related to McGee's employment at Erdman Lumber, not to the injury McGee sustained while working at J.D. The attorney

for Erdman Lumber, Mr. McPeek, argued that McGee was not involved in any type of accident during his employment at Erdman and that McGee suffered from a pre-existing condition due to the 1992 accident at J.D.

At the December hearing, Dr. Kersting, a family practitioner, testified that in his opinion, those who work in the logging industry carry a greater risk for development of low back pain, either from an acute injury or due to degenerative arthritic disease in the lower lumbar back. He attributed McGee's lower back condition to repetitive "pounding of the low back" while in a seated position, in addition to the "acute exacerbation" with the January 20, 1992 accident and 1994 incidences of increased pain without any precipitating events. He diagnosed McGee with chronic back pain due to the initial injury and degenerative arthritis.

Dr. Alyea, an orthopedic surgeon, stated there was not much objective evidence to account for McGee's complaints of pain. He discounted the theory that McGee's operation of the skidder caused disc herniation or bulging. He did not find McGee to have any permanent physical impairments.

Dr. Phillips, a physician who evaluated McGee, concluded claimant McGee had no neurological deficits and diagnosed him as having had a lumbosacral sprain in January of 1992 in the presence of degenerative intervertebral disc disease with persistent pain. He found McGee physically capable of employment and rendered an impairment of 6% of the whole person for two-level degenerative disc disease, inoperable with persistent symptoms, and apportioned one-third caused by the January 1992 accident and the other two-thirds due to natural progression of the disease process. Dr. Phillips stated that McGee did not experience a specific injury at Erdman and that the 1994 back spasms were a "temporary aggravation of his condition."

Dr. Gill, a mechanical engineer with an emphasis in human factors, testified that McGee's symptoms were consistent with excessive exposure to whole body vibration caused from operating a skidder and that McGee should not have returned to work as a skidder operator following the January 1992 accident. Other degenerative changes in claimant's spine were due to exposure to vibration in the course of operating the skidder.

The Industrial Commission referee issued its Findings of Fact, Conclusions of Law and Recommendation on October 10, 1997. The referee found that McGee developed degenerative joint disease in the lower back while he was employed at Erdman. McGee was not totally incapacitated by the disease, however, and thus was not entitled to recover from the mere fact that he suffered from the disease. Additionally, the referee found McGee had proven that he had a compensable industrial accident on January 20, 1992, while employed by J.D., which caused a bulging disc and lit up an asymptomatic pre-existing degenerative joint disease. McGee experienced a non-compensable exacerbation in May and July 1994 and neither employer was responsible for benefits from 1994 to present.

One of the referee's findings of fact read as follows, "Claimant suffered an injury to the L5–S1 disc in slip and fall, which was stabilized by late March 1992." The referee did not cite the specific medical opinions she relied on in reaching this determination. This finding by the referee served as the basis of McGee's appeal as he felt "medical stability" should not have been addressed at the December 1996 hearing. Additionally, McGee argued that he did not receive proper notice and the referee did not use the appropriate legal standards to determine if medical stability had been reached. McGee argued that the issue of medical stability should have been reserved for the September 1998 hearing and that his condition had not stabilized by March of 1992.

On January 26, 1998, the Industrial Commission's referee recommended McGee's cases against Erdman and J.D. become "unconsolidated." The referee recommended that the case against Erdman be dismissed based upon the determination of non-compensability of the claim and that the claim against J.D. proceed independently on the issues of permanent physical impairment, permanent disability in excess of impairment, and apportionment.

Referee Peggy McMahon conducted a hearing on September 28, 1998, in order to determine the extent of impairment, extent

of disability, and whether apportionment was appropriate. At the September hearing, testimony was heard from four witnesses. Exhibits, including testimony from physicians who testified at the previous hearing, were also introduced. The Industrial Commission determined McGee met the burden of proving that he suffered a 6% whole person impairment, that McGee did not prove he was totally and permanently disabled as a result of the 1992 industrial injury, and that McGee proved he suffered a disability of 15% of the whole person, inclusive of impairment, attributable solely to his 1992 industrial injury, thus entitling McGee to $14,850.00. The referee also determined that the defendants did not prove that McGee's pre-existing condition was apportionable.

## II.

### STANDARD OF REVIEW

■■■■ The Industrial Commission's conclusions of law are freely reviewable by this Court. *Taylor v. Soran Restaurant, Inc.,* 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998). Factual findings will be upheld if supported by substantial and competent evidence. *Id.* Constitutional issues as well as construction and application of legislative acts are questions of law subject to free review by this Court. *Struhs v. Protection Tech., Inc.,* 133 Idaho 715, 722, 992 P.2d 164, 171 (1999).

## III.

### ANALYSIS

### A. CLAIMANT HAD PROPER NOTICE THAT THE ISSUE OF MEDICAL STABILITY WAS TO BE DECIDED AT THE DECEMBER 1996 HEARING.

#### 1. Medical Stability.

A worker who suffers from a permanent disability as a result of an industrial accident

may recover for their injuries pursuant to the statutory scheme set forth in title seventy-two of the Idaho Code. *Harmon v. Lute's Const. Co., Inc.,* 112 Idaho 291, 293, 732 P.2d 260, 263 (1986); I.C. §§ 72–101 to –929. Specifically, under I.C. § 72–423, "permanent disability" has been defined as the condition that results "when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." *Reynolds v. Browning Ferris Indus.,* 113 Idaho 965, 967, 751 P.2d 113, 115 (1988). Under I.C. § 72–422, "permanent impairment" is defined as "any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of the evaluation...." I.C. § 72–422. The remainder of I.C. § 72–422 reads, "Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability." *Id.*

■■■■ Medical stability, or maximal medical rehabilitation, must be established before it can be determined if a claimant has suffered a permanent disability.[1] I.C. §§ 72–422 to –23. Idaho does not provide a definition for "maximal medical rehabilitation" or "stability" within its worker's compensation statutes. Although not binding on this Court, a look at how other states, such as Oregon and New Mexico, define these terms is informative.[2]

■■■■ McGee argues that the issue of medical stability is most relevant when the Commission is determining the extent of impair-

---

1. I.C. § 72–422 refers to **"maximal medical rehabilitation,"** whereas I.C. § 72–423 states, " 'Permanent disability' or 'under a permanent disability' results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and **no fundamental or marked change in the future can be reasonably expected."** I.C. § 72–423 (emphasis added).

2. Oregon defines "medically stationary" as "no further material improvement would reasonably be expected from medical treatment, or the passage of time." *Clarke v. SAIF Corp.,* 120 Or.App. 11, 852 P.2d 208 (1993); New Mexico defines "maximum medical improvement" as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical

ment or disability. Further, the parties in this case decided to reserve that issue for a later hearing. McGee's argument fails, however, as it does not recognize the fact that medical stability was also relevant to the one issue designated to be heard at the first hearing—the determination of liability.

At the initial hearing, McGee argued that he suffered an industrial accident in January of 1992 while employed at J.D. McGee claimed that he never recovered from this injury and that his pain was aggravated by his jobs at Erdman Logging. The Industrial Commission determined that McGee had indeed suffered an industrial accident in 1992. Further, the injury was stabilized by late March of 1992.

Medical stability played a pivotal role in the determination of liability and was appropriately before the Commission at the first hearing. In order to determine liability, the Commission had to establish when medical stability was reached. When the Commission determined that medical stability was reached in March of 1992, J.D. became responsible for permanent disability or impairment that McGee had suffered as a result of the 1992 accident. Erdman Logging, on the other hand, was not liable for the pain McGee suffered as a result of the 1992 injury because an accident did not aggravate McGee's pre-existing condition while he was employed there.

McGee is correct in stating that medical stability was an appropriate topic for the second hearing when the extent of his injury and impairment was to be determined. However, medical stability was also relevant to the determination of liability at the first hearing.

Additionally, in September of 1998, at the time the second hearing took place, the Commission explained why medical stability had been appropriately determined at the first hearing. The Commission noted:

First, the issue before the Commission during the first hearing was "whether claimant's *current condition* [was] causally related to the accident and injuries of January 20, 1992." Emphasis added. Hence, the issue of claimant's present condition was properly before the Commission in late 1996. Next, claimant had been suffering from severe muscle spasms for over two years by that date and the Commission considered them in rendering its first decision in this matter. Likewise, claimant had probably been severely depressed before the 1996 hearing. Thus, the issue of what is here called claimant's "current" condition has already been decided.

As noted by the Commission, medical stability was an appropriate issue to be determined at the first hearing and evidence concerning McGee's condition following the 1994 incident was considered by the Commission. Consequently, as long as McGee received proper notice that medical stability was to be discussed at the first hearing, the issue of medical stability was correctly determined at the first hearing.

## 2. Notice.

▆▆▆▆ "[A]n administrative tribunal may not raise issues without first serving the affected party with fair notice and providing him with a full opportunity to meet the issue." *White v. Idaho Forest Indus.*, 98 Idaho 784, 786, 572 P.2d 887, 889 (1977). Notice informing the parties of a hearing on "all issues considered by the Appeals Examiner" satisfies due process requirements. *Roll v. City of Middleton*, 105 Idaho 22, 27, 665 P.2d 721, 726 (1983)(finding compliance with due process requirements when the appeals examiner framed the issue to include the disputed topic and the parties had agreed with the issue as framed by the examiner). Likewise, notice informing the parties that the purpose of the hearing is to determine the amount of benefits a claimant is entitled to, also complies with due process requirements, even when the notice does not detail specific statutory provisions to be covered at the

probability as determined by a health care provider." *Smith v. Cutler Repaving*, 126 N.M. 725, 727, 974 P.2d 1182, 1184 (1999). Medical stability sets the time at which a temporary impairment or disability ends and a determination of a

permanent disability occurs. *Tsosie v. Industrial Comm'n of Arizona*, 183 Ariz. 539, 905 P.2d 548, 549 (1995); *see also Blue Mesa Forest v. Lopez*, 928 P.2d 831, 833 (Colo.App.1996).

hearing. *Mortimer v. Riviera Apartments,* 122 Idaho 839, 847, 840 P.2d 383, 391 (1992)(finding notice to be adequate even though the employer did not receive notice that I.C. § 72–210 was to be applied against him at the benefits hearing).

■ In this case, the parties addressed the topics to be covered at the December hearing on various occasions, thus compounding the resulting confusion over the issues to be determined at the hearing. For example, in McGee's motion to bifurcate dated September 3, 1996, and the attached affidavit, McGee specifically stated that he wanted to bifurcate the hearing because he was continuing his treatment program and was attempting to improve his level of functioning. It was evident that McGee felt he had not achieved stability and that he was attempting to reserve the issue of medical stability for the later hearing, as opposed to the upcoming December hearing.

The order from the Industrial Commission that granted the bifurcation failed to provide clarification as to the issues to be decided, noting only that the December hearing would address "whether the claimant's current condition is causally related to the accidents and injuries of January 20, 1992, and May 1, 1994."

Finally, an examination of the discussion held at the beginning of the December hearing indicates that the parties all had differing expectations as to the issues to be decided. Counsel for J.D., Mr. Harmon, summarized his understanding of the issues to be decided as to whether McGee was entitled to additional medical care regarding either the 1992 or 1994 injury and, if so, whether the care and treatment would be the responsibility of Erdman or J.D. McGee's attorney, Mr. Verby, claimed that his understanding was that the issue was one of liability, meaning responsibility, and not necessarily whether McGee was entitled to additional medical care. Erdman's attorney, Mr. McPeek, stated that the issue was one of basic liability, including stability. Mr. McPeek understood the issues of impairment and disability to be reserved for a later hearing. In an attempt to clarify the issues, the referee stated the issues as 1) whether there was an accident and injury on or about May 1, 1994, while McGee was employed at Erdman, and 2) whether McGee's current condition was related in whole or in part to the accident and injury he sustained at J.D. on or about January 20, 1992. The referee noted, "To me, we're all talking just threshold. Is this current condition due to one or the other employment or both?"

Although confusion existed over the exact issues to be addressed at the hearing, the parties, including McGee, knew that the issue of liability, at the very least, was going to be addressed at the December hearing. In fact, in McGee's motion to bifurcate the hearing, he specifically requested that "liability" be determined at the first hearing. Therefore, McGee had notice that various issues pertaining to liability would be discussed and his due process rights were not violated when medical stability was determined at the first hearing.

### B. THE INDUSTRIAL COMMISSION APPLIED THE CORRECT LEGAL STANDARDS TO THE ISSUE OF MEDICAL STABILITY.

■ Determination of permanent impairment and temporary disability are questions of fact for the Industrial Commission. *Soto v. Simplot,* 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). The weight and credibility of the evidence relied upon by the Commission will not be scrutinized by this Court. *Id.* Evidence impeaching a claimant's credibility need not be ignored in a permanent impairment hearing. *Id.* The reports from the physician who treated the claimant should be given at least as great, if not greater, weight than reports from a physician who sees the claimant only in preparation for trial. *Graves v. American Smelting & Refining Co.,* 87 Idaho 451, 456, 394 P.2d 290, 293 (1964).

McGee argues that the date of medical stability was never formally determined and that he was not given the chance to present evidence regarding the date at which his injuries were to be regarded as nonprogressive. Because medical stability must exist before a permanent disability can be found,

McGee believes the Commission inappropriately determined the date of permanent disability.

In Referee Cheri Bush's Findings of Fact and Conclusions of Law dated October 10, 1997, she found the date of stabilization to be late March of 1992. The referee noted that McGee had obtained a full work release at that time from Dr. Fowler, the physician who had treated McGee immediately after the accident. Additionally, McGee returned to work in February of 1992 and did not seek additional medical treatment. Testimony presented at the December hearing established that McGee told Dr. Fowler on March 12, 1992, that he was not having pain and that he wanted to go back to work and that McGee performed hard, physical labor for two years following the January 1992 accident.

McGee did not meet the burden of establishing that he was still in the recovery period. Additionally, by telling Dr. Fowler that he was not experiencing pain and then by later claiming that he was misleading Dr. Fowler in order to claim a full work release, McGee placed his credibility into question. As the determination of temporary or permanent disability is a question of fact, a look at the evidence presented on McGee's medical condition indicates that substantial, competent evidence existed for the Industrial Commission to determine that McGee was medically stable in March of 1992. The order of the Industrial Commission finding that McGee was medically stable in March of 1992 is affirmed.

## C. THE INDUSTRIAL COMMISSION DID NOT ERR IN ITS DETERMINATION THAT MCGEE'S BACK SPASMS AND PSYCHOLOGICAL CONDITION DID NOT RELATE BACK TO MCGEE'S PREVIOUS INJURY SUFFERED IN JANUARY OF 1992.

The law in Idaho clearly states that an employee who suffers from a pre-existing condition must establish that his or her disease was aggravated by an accident before they are entitled to recover. *Nelson v. Ponsness–Warren Idgas Enter.*, 126 Idaho 129, 133, 879 P.2d 592, 595 (1994). "An injured worker must do more than show an onset of pain while at work in order to sustain his or her burden of proving an event or mishap occurred ...." *Perez v. J.R. Simplot Co.*, 120 Idaho 435, 438, 816 P.2d 992, 995 (1991). The Idaho Code defines "accident" as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72–102(17)(b).[3]

"Occupational disease" is defined in the Idaho Code as "a disease due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the trade, occupation, process, or employment, but shall not include psychological injuries, disorders or conditions...." I.C. § 72–102(21)(a).[4] As with pre-existing conditions, one who suffers from an aggravation of an occupational disease must also establish that an accident caused the aggravation. *Reyes v. Kit Mfg. Co.*, 131 Idaho 239, 241, 953 P.2d 989, 991 (1998).

McGee cites to *Bowman v. Twin Falls Const. Co., Inc.*, 99 Idaho 312, 581 P.2d 770 (1978), *overruled by Demain v. Bruce McLaughlin Logging*, 132 Idaho 782, 785, 979 P.2d 655, 658 (1999), as authority for the rule that an employee suffering from a pre-existing disease that is aggravated or accelerated during the course of employment is entitled to recover. McGee emphasizes that even slight aggravations of a pre-existing condition are recoverable when they cause total permanent disability.

*Bowman* is no longer the law in Idaho. In choosing to overrule *Bowman*, this Court stressed that an accident must occur before

---

3. In 1995, the definition of "accident" was found in I.C. § 72–102(15)(b).

4. In 1995, the definition of "occupational disease" was found in I.C. § 72–102(18)(a). The definitional section was renumbered in 1996, so that "occupational disease" fell within I.C. § 72–102(20)(a), and then renumbered again in 1997, so that it now falls within § 72–102(21)(a).

an employer is liable for aggravation of a pre-existing condition. *Demain*, 132 Idaho at 785, 979 P.2d at 658. The Court noted, "*Bowman* did not indicate that a claimant had to prove an industrial accident before he would be entitled to compensation for aggravation of his pre-existing disease. To the extent *Bowman* is inconsistent, *Bowman* is overruled." *Id.*

In *Demain*, this Court addressed a claim very similar to that presented by McGee. *Id.* at 782–83, 979 P.2d at 655–56. The claimant in *Demain* filed a worker's compensation complaint claiming that he suffered back injuries due to "sustained repetitive trauma to the spine in his occupation as a skidder operator" during the course of his work for a logging company. *Id.* at 783, 979 P.2d at 656. The claimant, Demain, also claimed that he suffered from "degenerative disc disease." *Id.*

Following a hearing to determine whether Demain suffered from a compensable occupational disease, the Industrial Commission referee determined that Demain suffered from a pre-existing degenerative disc disease and a herniated disc, but that the disease was asymptomatic at the time Demain began work for the logging company. *Id.* However, the Commission went on to say that Demain was exposed to prolonged vibrations while operating the skidder and this repetitive trauma and injury aggravated or lit up his pre-existing weakness, thus entitling Demain to a recovery. *Id.*

This Court reversed the Industrial Commission's decision, finding that *Nelson* was directly applicable to the facts in *Demain*. *Demain*, 132 Idaho at 784, 979 P.2d at 657. Consequently, Demain was not entitled to recover as he had not established that he suffered from an accident. *Id.* at 785, 979 P.2d at 658.

In this case, the referee found that McGee developed degenerative joint disease in the low back while he was employed at Erdman in the time period ranging from 1988 to 1991. Additionally, the referee found that McGee "suffered an industrial accident and injury on January 20, 1992, when he slipped and fell at J.D. Lumber sustaining a bulging disc at L5–S1, and lit up the pre-existing degenerative joint disease." The referee found McGee did not suffer a compensable accident which aggravated the pre-existing condition in May or July 1994.

Like the claimant in *Demain*, McGee is not entitled to recover under Idaho worker's compensation law for the pain he suffered after the 1994 incidents because McGee did not establish that an accident occurred. Consequently, the Commission's finding that McGee is not entitled to compensation resulting from the 1994 incident is affirmed.

McGee also argues that the Industrial Commission applied an incorrect causation analysis in reaching its determination that McGee's back spasms and psychological condition were not causally related to the 1992 accident.

Following the September 1998 hearing, Referee Peggy McMahon found McGee's back spasms and psychological condition were not the direct and natural consequences of the 1992 accident. The referee cited to various facts including: 1) McGee continued hard physical labor during the time period spanning from March 1992 to May of 1994; 2) McGee did not get medical help during that two-year time period; 3) McGee began suffering back spasms more than two years after his industrial accident; 4) The back pain experienced in 1994 involved different and increased symptoms from that experienced prior to the incident.

In regards to McGee's psychological condition, the referee noted that Dr. Mays, a psychologist, testified that a person such as McGee, who becomes physically injured, becomes vulnerable to depression which amplifies the pain and physical discomfort. However, Dr. Mays could not verify whether McGee's depression was caused by the 1992 accident or the 1994 incidents.

The causation analysis performed by the Commission supports the conclusion that McGee's condition in 1994 was not related to the 1992 accident. However, a more compelling reason for denying McGee the relief he requests is the fact that McGee did not es-

tablish that an accident occurred in 1994 which aggravated his pre-existing condition or occupational disease. We hold there is substantial and competent evidence to support the Industrial Commission's finding.

### D. MCGEE IS NOT ENTITLED TO ATTORNEY FEES.

McGee requested attorney fees, however he did not cite to any authority or provide argument in support of his request. Attorney fees will not be awarded on appeal when no statutory authority has been cited in support of the request. *Nelson*, 126 Idaho at 133, 879 P.2d at 595. Consequently, McGee is not entitled to attorney fees.

### IV.

### CONCLUSION

Although the issues to be determined at the first hearing were somewhat confused by the various communications that took place between the referee and the various parties involved, McGee had notice that liability was to be discussed at the first hearing. In this case, medical stability relates to liability, so McGee should have been prepared to present testimony on that issue at the first hearing. The determination of permanent or temporary disability is a question of fact for the Industrial Commission to determine. Substantial and competent evidence supported the finding that McGee's injury was stabilized by March of 1992.

Finally, McGee did not meet his burden of proving a causal link between the injuries he suffered in 1994 and the pre-existing degenerative disease or his earlier injury in 1992. McGee did not establish that an accident occurred and consequently, the decision of the Industrial Commission is affirmed. Costs are awarded to respondent. No attorney fees are awarded.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.

