992 P.2d 164

Marvin A. STRUHS, Claimant–Appellant,

v.

PROTECTION TECHNOLOGIES, INC., dba American Protective Services, Employer, and Wausau Insurance Companies, Surety, Defendants–Respondents.

No. 24885.

Supreme Court of Idaho, Pocatello, August 1999 Term.

Dec. 20, 1999.

Goicoechea Law Offices, Chtd., Idaho Falls, for appellant. Michael R. McBride argued.

Bowen, Gardner & Bailey, Boise, for respondents. Alan R. Gardner argued.

KIDWELL, Justice.

Marvin Struhs appeals from a decision by the Industrial Commission awarding his employer's insurance company a subrogated interest in Struhs' third-party settlement for injuries sustained in a work-related automobile accident. We affirm.

## I.

## FACTS AND PROCEDURAL HISTORY

### A. Facts.

Marvin Struhs worked for American Protective Services (APS). APS and its successor, Protection Technologies, Inc., provided security services at the Idaho National Engineering Laboratory (INEL) (now INEEL). A member company of the Wausau Insurance Companies (Wausau) provided worker's compensation coverage for all INEL subcontractors, including APS.

The United States Department of Energy (DOE) contracted with EG&G Idaho, Inc. (EG&G) to operate INEL facilities. EG&G paid worker's compensation premiums for all INEL contractors. The contract was an "allowable cost and fee contract" under which DOE monitored EG&G expenses to determine if they were reasonable and allowable under the terms of the contract. DOE paid actual costs for EG&G expenses, which included any payments EG&G made to Wausau Insurance Company for worker's compensation premiums.

On September 30, 1988, Struhs was driving a U.S. government vehicle at INEL in the course of work. Struhs was injured when a U.S. Army (Army) vehicle did not yield the right of way. Wausau paid Struhs $21,743.33 in worker's compensation benefits for his injuries.

Through his attorney Michael McBride, Struhs filed a notice of tort claim with the Army in September 1990. Wausau did not file a separate notice of tort claim. In September 1991, McBride wrote to Wausau. He advised Wausau that he was representing Struhs in a third-party claim against the Army and offered to represent the company for a ⅓ contingency fee. Soon afterwards, Wausau's Lawrence Spjute accepted McBride's offer of representation and the fee arrangement.

On March 12, 1992, the Army sent McBride a letter stating:

> Because the United States was reimbursing the cost of workmens' compensation benefits pursuant to the government contract with Mr. Struhs' employer, the United States, as a "statutory employer", is entitled to a reduction of damages equal to the amount of workmens' compensation benefits received by Mr. Struhs from the insurer (Wausau Insurance) of Mr. Struhs' direct employer, [APS]. *Runcorn v. Shearer Lumber Products, Inc.*, [107 Idaho 389,] 690 P.2d 324 (Idaho 1984).

On March 30, 1992, McBride sent a copy of the Army's letter to Spjute. McBride asked Wausau's opinion on the Army's contention that it was entitled to reduce damages by the amount of worker's compensation benefits paid. To "push the file along," McBride set an arbitrary deadline of April 17, 1992, for Wausau's response. Spjute had retired in February 1992, however, and no one at Wausau answered McBride's letter. McBride himself did no independent research to determine whether the "statutory employer" exception of *Runcorn* applied to Struhs' case.

For the next three months, while a settlement with the Army was pending, McBride did not contact Wausau. He later testified that he did not believe that Wausau was interested in further action on the settlement. Nevertheless, McBride did not ask if Wausau wished to have him continue to represent it. On June 18, 1992, the Army paid Struhs $45,000 in full satisfaction of his claims. McBride inserted language into the settlement agreement that indicated that the settlement did not cover worker's compensation benefits.[1]

In December 1992, Wausau contacted McBride, asking if anything had been done on Struhs' claim. McBride responded by sending Wausau a copy of the settlement. He explained that the Army, based on its understanding of *Runcorn*, had declined to pay damages equal to the amount of worker's compensation benefits received.

In August 1993, McBride wrote the Army inquiring about Wausau's claim against the Army. The Army replied that it had previously informed McBride that the United States could make only one payment on Struhs' claim. The Army also noted that it had not received notice of Wausau's claim within the two-year statute of limitations. Nevertheless, McBride made a written demand on the Army in August 1994 for the monies that Wausau had paid on Struhs' worker's compensation claim. Within a few months, the Army denied Wausau's claim because it had not been filed within the two-year statute of limitations for tort claims.

Shortly before the Army denied Wausau's claim, McBride filed a complaint in federal

---

1. At the time the settlement agreement was signed, McBride was still representing Wausau. We do not address the issues of whether McBride as an agent could bind Wausau or whether Wausau could pursue its rights against McBride, because neither party raised these issues on appeal.

district court seeking reimbursement from the Army for Wausau's subrogated interest. On December 2, 1994, Wausau informed McBride that it no longer wished him to pursue a separate recovery from the Army. Wausau demanded $21,127.53 from the settlement Struhs had already received from the Army, less costs and attorney fees. McBride withdrew as attorney for Wausau in the civil action. The federal district court dismissed the civil action with prejudice when Wausau failed to pursue the action.

## B. Procedural History.

On August 20, 1993, Struhs (represented by McBride) filed a worker's compensation complaint with the Industrial Commission. Wausau answered on September 13, 1993, responding that Struhs was due no further benefits and, "[i]n fact, defendants are subrogated to third-party recovery and presently owed money by claimant." On July 28, 1995, Wausau filed a complaint with the Industrial Commission against McBride, Goicoechea Law Offices, and Struhs seeking subrogation. The Industrial Commission recharacterized the complaint as an amended answer to Struhs' complaint.

Wausau and Struhs stipulated to the facts, exhibits, and legal issues before the Industrial Commission.

The Referee issued a decision on April 29, 1998, deciding all issues in favor of Wausau. The Industrial Commission adopted the Referee's Findings of Fact, Conclusions of Law, and Recommendation. Struhs moved for reconsideration, which the Industrial Commission denied on July 8, 1998. Struhs filed a notice of appeal on August 3, 1998.

## II.

## STANDARD OF REVIEW

When this Court reviews a decision of the Industrial Commission, it reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). This Court "views all facts and inferences in the light most favorable to the party who prevailed before the Commission."

*Boley v. State, Industrial Special Indem. Fund*, 130 Idaho 278, 280, 939 P.2d 854, 856 (1997). However, this Court exercises free review over questions of law that are presented. *Ogden v. Thompson*, 128 Idaho at 88, 910 P.2d at 760. Constitutional issues and the construction and application of legislative acts are pure questions of law over which this Court exercises free review. *Idaho State Ins. Fund v. Van Tine*, 132 Idaho 902, 905–06, 980 P.2d 566, 569–70 (1999).

## III.

## ANALYSIS

## A. An Employer May Exercise Its Right of Subrogation Under I.C. § 72–223(3) When It Has Voluntarily Paid Worker's Compensation Benefits.

An employer that pays worker's compensation to an injured employee may be reimbursed out of the recovery from a liable third party. I.C. § 72–223. The statute provides, "If compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability." I.C. § 72–223(3). Within the worker's compensation title, the term "award" usually (but not always) refers unambiguously to action by the Industrial Commission. Struhs asserts that the "claimed and awarded" language in the statute requires that worker's compensation benefits must be "awarded" by an action of the Industrial Commission before an employer has a right to subrogate.

A statute is ambiguous where the language is capable of more than one construction. *See Killeen v. Vernon*, 121 Idaho 94, 97, 822 P.2d 991, 994 (1991). In construing an ambiguous statute, this Court attempts to ascertain legislative intent through examining factors such as the statute's language, the reasonableness of a proposed interpretation, and the policy underlying the statute. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.*, 127 Idaho 432, 435,

901 P.2d 1333, 1336 (1995); *see also Davaz v. Priest River Glass Co.,* 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

The wording of I.C. § 72–223(3) dates to 1971, when the legislature recodified the worker's compensation title. 1971 Idaho Sess. Laws ch. 124. The legislative purpose was, in part, to "prescrib[e] the rights, duties, obligations and liabilities of employers, employees and sureties." *Id.* The dual purposes of subrogation under I.C. § 72–223 are to achieve an equitable distribution between responsible parties "by assuring that the discharge of an obligation be paid by the person who in equity and good conscience ought to pay it" and "to prevent the injured claimant from obtaining a double recovery for an injury." *Presnell v. Kelly,* 113 Idaho 1, 3, 740 P.2d 43, 45 (1987). Neither of these purposes would be served by a rule that forbids recovery by an employer who voluntarily pays benefits. Such a rule would undercut expeditious payment of claims by sureties and result in delay and unnecessary litigation.

Our previous decisions have consistently recognized an employer's subrogation rights where the employer voluntarily paid benefits. For instance, in *Barnett v. Eagle Helicopters,* this Court interpreted I.C. § 72–223(3) in apportioning an injured employee's damages between a negligent third party and a negligent employer whose surety had paid worker's compensation benefits and had estimated future benefits. *Barnett v. Eagle Helicopters, Inc.,* 123 Idaho 361, 363, 848 P.2d 419, 421 (1993). This Court held that the trial court correctly reduced the verdict against the third party only by worker's compensation benefits actually paid, and correctly ordered the injured employee to reimburse the third party (up to its total sum of liability) only when he was actually paid future benefits. *Id.* at 364, 848 P.2d at 422. *See also Cameron v. Minidoka County Highway Dist.,* 125 Idaho 801, 802, 874 P.2d 1108, 1109 (1994) (where surety voluntarily paid death benefits and claimants settled with third party, issue was what proportion of litigation costs and attorney fees the surety should pay in proportion to amount of third-party recovery which benefited the surety); *Runcorn v.*

*Shearer Lumber Prods., Inc.,* 107 Idaho 389, 391–92, 395–96, 690 P.2d 324, 326–27, 330–31 (1984) (interpreting subrogation statute in apportioning employee's damages between negligent third party and negligent employer where surety had paid worker's compensation benefits).

In accord with the purposes behind the subrogation statute and our prior decisions, we hold that an employer may exercise its right of subrogation under I.C. § 72–223(3) when it has voluntarily paid worker's compensation benefits.

### B. The Army Was Not Immune from Third-Party Liability for Struhs' Worker's Compensation Benefits.

■ Struhs contends that, as his "statutory employer," the United States government had already paid his worker's compensation benefits and was not obligated for them again in a damage award. Thus, he argues, Wausau as employer's surety had no right to a subrogation interest in the proceeds of the settlement.

The Federal Tort Claims Act (FTCA) permits tort actions against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. If the Army did not pay Struhs' worker's compensation benefits as his "statutory employer," it would be fully liable for all of Struhs' damages.

■ Under the worker's compensation law in effect in September 1988,

"Employer" means any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who ... is not the direct employer

of the workmen there employed. If the employer is secured, it means his surety so far as applicable.

I.C. § 72–102(10) (1988). An employee may have more than one employer, including the direct employer and the indirect employer. *Runcorn*, 107 Idaho at 393, 690 P.2d at 328. "Statutory employer" refers to an indirect employer under the definition of I.C. § 72–102(10). *Id.* at 392–93, 690 P.2d at 327–28. A statutory employer is liable to pay worker's compensation benefits, but only if the direct employer does not pay those benefits. I.C. § 72–216(1), (2).

■ "Where ... the United States claims statutory employer status, the proper focus is on the *agency* or *department* of the United States which contracted for the work." *Izard v. United States*, 946 F.2d 1492, 1495 (10th Cir.1991). *Accord Rivera v. U.S. Army Corps of Eng'rs*, 891 F.2d 567, 568 (5th Cir.1990); *Pendley v. United States*, 856 F.2d 699, 702 (4th Cir.1988). *See also* 28 U.S.C. § 2675(a) (requiring tort claimant to give notice "to the appropriate Federal agency"). The DOE, which indirectly employed Struhs through its contracts with EG&G and the subcontract with APS, was Struhs' statutory employer. On the other hand, the Army, which had no contractual or employment relationship with Struhs, was not Struhs' statutory employer. As with any third-party tortfeasor where the employer is not concurrently negligent, the Army was fully liable for any damages suffered by Struhs, including those damages compensated by his employer through worker's compensation benefits.[2] I.C. § 72–223(1)–(3). *See also, e.g., Sherrard v. City of Rexburg*, 113 Idaho 815, 816–17, 748 P.2d 399, 400–01 (1988); *Walker v. Hensley Trucking*, 107 Idaho 572, 573, 691 P.2d 1187, 1188 (1984); *Schneider v. Farmers Merchant, Inc.*, 106 Idaho 241, 243, 678 P.2d 33, 35 (1983).

Struhs asserts that, even if state law allows the Army to reimburse Struhs and Wausau for worker's compensation benefits, federal law (pursuant to 32 C.F.R. Part 536)

bars payment for Wausau's subrogated interest because the United States indirectly paid worker's compensation premiums. We disagree. 32 C.F.R. § 536.5(b)(3) directs in part, "[C]laims from the workmen's compensation carrier as subrogee or otherwise will not be considered payable where the United States has paid the premiums, directly or indirectly, for the workmen's compensation insurance." As noted above, the appropriate focus is on a particular federal agency, not the federal government as a whole. Because the Army did not pay Struhs' worker's compensation premiums, it has no immunity from paying his full damages. In addition, 32 C.F.R. Part 536 is merely advisory: it "*contain[s] general instructions and guidance*" for processing claims against the Army which "apply to all claims *unless other laws or regulations specify other procedures*." 32 C.F.R. § 536.1(a) (emphasis added). The Army, as a third-party tortfeasor, was liable to Struhs under Idaho law, and federal law confirms its liability. *See* 28 U.S.C. § 2674.

Because the Army did not pay Struhs' worker's compensation premiums, the Army was not immune from third-party liability for Struhs' worker's compensation claims.

**C. Wausau Was Not Required to File a Separate Notice of Tort Claim Against the Army to Preserve Its Right to Subrogation.**

■ Struhs contends that, in order to assert its right to subrogation against the Army as a third-party tortfeasor, Wausau was required to file a separate notice of tort claim with the Army.

The Idaho Code allows an employer to bring a separate action against a third party who is responsible for injuring the employer's employee:

Action may be instituted against such third party by the employee, or in event compensation has been claimed and awarded, by the employee and employer jointly, in

---

**2.** Although we decide this case on other grounds, we note that, even if the Army had been Struhs' statutory employer, it would still bear full liability for Struhs' damages. If a direct employer does in fact pay worker's compensation benefits

to an employee, a statutory employer is fully liable for damages, including those compensated by worker's compensation. I.C. § 72–223(1), (2), (3); *Runcorn*, 107 Idaho at 393, 690 P.2d at 328.

the employee's name, or, if the employee refuses to participate in such action, by the employer in the employee's name. I.C. § 72–223(2).

This scheme contemplates only one action against the third party: by the employee alone, by the employee and the employer jointly if worker's compensation has been paid, or by the employer alone if worker's compensation has been paid and the employee refuses to join the action. Even if the employer, as subrogee, brings the action to retrieve monies paid in worker's compensation benefits, the action is brought in the employee's name. I.C. § 72–223(2).

This Court has interpreted I.C. § 72–223(2) to mean that only one action may be brought against the third party:

> There is but one cause of action under the statute, and one right to subrogation, and if the action is brought in the employee's name the employer and its surety are bound by estoppel to the results of that trial conducted by the employee.

*Runcorn,* 107 Idaho at 396, 690 P.2d at 331. *See also Scott v. Agric. Prods. Corp.,* 102 Idaho 147, 150, 627 P.2d 326, 329 (1981) (where injured employee brought suit against third party but was not joined by employer, employer was subrogated party in employee's action and could not bring further suit against third party). *Accord Harms v. Williamson,* 956 P.2d 649, 649, 653 (Colo.Ct.App. 1998) (to protect its right to reimbursement of benefits paid to injured employee, insurer was not required to file a separate notice of claim but could rely on notice of claim filed by employee, even where employee did not assert insurer's claim and where insurer did not join in lawsuit as separate party).

When Struhs brought an action against the Army, Wausau's right to subrogation was derivative of Struhs' recovery. Wausau was not required to file a separate tort claim against the Army to preserve its right to subrogation.

### D. Wausau's Subrogation Rights Are Not Restricted by the Agreement Between Struhs and the Army.

■ Struhs asserts that the terms of his settlement with the Army, which character-ized the recovery as "general damages," barred Wausau from recovering reimbursement from the settlement monies.

■ It is a matter of first impression before this Court whether an agreement between a third-party tortfeasor and an injured employee can restrict the employer's subrogation rights. In automobile insurance cases, we have held that an insurer is not bound by a decision to which it was not a party. *Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 361, 956 P.2d 674, 678 (1998); *see also Anderson v. Farmers Ins. Co. of Idaho,* 130 Idaho 755, 757, 947 P.2d 1003, 1005 (1997). Employers have a statutory right to subrogation, and any characterization of damages to which the employer is not privy cannot change the employer's statutory rights. A contrary holding could lead to situations where employees and third-party tortfeasors reached unilateral agreements that would give the employee a double recovery or result in the culpable party not shouldering its full responsibility for damages— results that would be diametrically opposed to the purposes of the subrogation statute. *See Presnell v. Kelly,* 113 Idaho at 3, 740 P.2d at 45. Therefore, we hold that an employee and third party's unilateral actions cannot restrict an employer's subrogation rights.

Other jurisdictions have reached a like result. In Minnesota, an employee may settle a tort claim with the third party without the employer's consent, but such a settlement cannot affect the employer's subrogation rights. *Naig v. Bloomington Sanitation,* 258 N.W.2d 891, 893 (Minn.1977). Similarly, the Colorado Court of Appeals held that where worker's compensation benefits extended only to "economic" benefits, the surety was not bound by an employee's unilateral settlement with a third party that classified the settlement as one purely for non-economic damages. *Sneath v. Express Messenger Serv.,* 931 P.2d 565, 568 (Colo.Ct.App.1996).

For these reasons, we affirm the Industrial Commission's conclusion that Wausau could exercise its subrogation rights against Struhs' settlement with the Army.

**E. Struhs' Rights Under the Idaho Constitution Are Not Impaired by Wausau's Recovery of Its Subrogated Interest.**

 Article I, Section 18 of the Idaho Constitution provides in part that "right and justice shall be administered without sale, denial, delay, or prejudice." Struhs asserts that I.C. § 72–223, if interpreted to allow Wausau to recover its subrogation interest, violates this provision by impairing Struhs' right to justice without prejudice. He contends that his right to a full tort recovery is prejudiced if Wausau can exercise subrogation against a settlement that Struhs and the Army characterized as general damages. Struhs may properly raise this issue for the first time on appeal, as he has done, because the Industrial Commission does not have jurisdiction to address constitutional challenges. *Tupper v. State Farm Ins.*, 131 Idaho 724, 729, 963 P.2d 1161, 1166 (1998).

 Idaho citizens enjoyed certain rights and remedies under the law at the time the Constitution was adopted, and the purpose of Article I, Section 18 is to secure these rights as they have been modified by the legislature. *See Martinez v. State*, 130 Idaho 530, 535, 944 P.2d 127, 132 (Ct.App.1997) (quoting *Moon v. Bullock*, 65 Idaho 594, 603, 151 P.2d 765, 769 (1944), *overruled on other grounds by Doggett v. Boiler Eng'g & Supply Co.*, 93 Idaho 888, 477 P.2d 511 (1970)). "Nothing in Art. I, § 18, either explicitly or implicitly prohibits legislative modification of common law actions." *Jones v. State Bd. of Medicine*, 97 Idaho 859, 864, 555 P.2d 399, 404 (1976).

Struhs' argument is without merit. Struhs was entitled to a full tort recovery from the Army. He voluntarily chose to accept a settlement that, according to him, did not include payment for his full tort damages. He and the Army voluntarily characterized the settlement as "general damages." Wausau, as noted above, is not bound by the unilateral action of Struhs and the Army. We find no prejudice to Struhs' rights.

 In his reply brief, Struhs also argues that I.C. § 72–223 is so ambiguous as to deprive him of due process of law under the U.S. and Idaho Constitutions. Because Struhs raised this issue only in his reply brief, this Court will not address it. *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995); *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993).

**F. Wausau Had No Duty to Mitigate Damages by Pursuing Its Own Third-Party Claim Against the Army.**

 Struhs asserts that, even if Wausau had a right of reimbursement from the Struhs-Army settlement, it was required to mitigate damages by pursuing a direct suit against the Army. The Industrial Commission concluded that Wausau had no such duty.

Subrogation in worker's compensation is governed by statute. Wausau was entitled to pursue its subrogation interest by asserting an interest in Struhs' settlement. No provisions of the Worker's Compensation title require an employer to pursue its own action against a third-party tortfeasor with whom an employee has reached a separate settlement. We decline to impose a duty to mitigate when the legislature has not seen fit to do so.

## IV.

## CONCLUSION

Wausau is entitled to subrogation from the third-party settlement Struhs reached with the Army. The order of the Industrial Commission is affirmed. Costs to respondents.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS concur.