50 P.3d 479

**Charles E. CUTSINGER,
Claimant–Appellant,**

v.

**SPEARS MANUFACTURING COMPANY, INC., Employer and AIU Insurance Company, Surety, Defendants–Respondents.**

No. 26089.

Supreme Court of Idaho,
Idaho Falls, May 2001 Term.

June 28, 2002.

Petersen & Parkinson, P.C., Idaho Falls, for appellant. James Arnold argued.

Anderson, Julian & Hull, Boise, for respondents. Natalie Camacho Mendoza argued.

TROUT, Chief Justice.

## I.

## NATURE OF THE CASE

Claimant Charles E. Cutsinger (Cutsinger) appeals the Industrial Commission's (Commission) decision in which the Commission denied him benefits for the aggravation of his preexisting condition. We affirm.

## II.

## FACTUAL AND PROCEDURAL HISTORY

Cutsinger suffered a left elbow injury in the eighth grade while he was playing foot-

ball. Cutsinger subsequently sought medical treatment for the injury, and he had several surgeries to correct the injury between 1980 and 1990.

In 1994, Cutsinger went to work as a fabricator at Spears Manufacturing (Spears), a manufacturer of pipe fittings and valves. While working for Spears, Cutsinger's left arm and wrist began to bother him again. He continued to work for Spears until November of 1996, when he temporarily left to pursue another employment opportunity. He returned to work for Spears in February of 1997, and resumed his previous job duties. Following his return, Cutsinger complained of pain and swelling in his wrist, and he sought further medical attention, including another surgery. On April 8, 1998, a medical doctor, Dr. Porter, linked Cutsinger's wrist problem to his elbow injury and surgical attempts to correct the elbow injury. Dr. Michael Phillips, an orthopedic surgeon, examined Cutsinger on December 28, 1998, and he stated that in his opinion, the wrist problem was totally attributable to Cutsinger's elbow injury.

Cutsinger was given a release to return to work in January 1999, and he sought worker's compensation for his wrist injury. The referee found that Cutsinger's work activities, involving repetitive wrist movement, aggravated and/or accelerated his preexisting condition.

The referee, however, found that Cutsinger had not proven to a reasonable degree of medical probability that an accident arising out of and in the course of his employment caused the aggravation or acceleration of his preexisting condition. The referee noted that even though Cutsinger had testified about two industrial accidents involving his left wrist, he had not presented medical evidence supporting a causal relationship between either of the alleged accidents and the aggravation of his condition. The referee further observed that Dr. Porter had cited the repetitive nature of Cutsinger's work activity, and not a specific incident, as the cause of the symptoms. The referee thus concluded:

> [E]ven assuming Claimant has met his burden of proving an occupational disease,

his claim remains non-compensable under *Nistad, Nelson,* [*Nelson v. Ponsness-Warren Idgas Enters.,* 126 Idaho 129, 879 P.2d 592 (1994)] and its progeny because proof of a precipitating accident is lacking. Thus, the remaining issues of occupational disease, medical benefits, temporary disability, permanent partial impairment, and attorney fees are rendered moot.

The Industrial Commission subsequently adopted the referee's Findings of Fact and Conclusions of Law. Cutsinger filed a timely notice of appeal to this Court on December 13, 1999.

## III.

## DISCUSSION

On appeal, the sole issue raised is whether the legislature intended to overrule *Nelson v. Ponsness–Warren Idgas Enter.,* 126 Idaho 129, 879 P.2d 592 (1994), and its progeny when it amended Idaho Code § 72–439 in 1997. *Nelson* required that there be an accident before a preexisting condition, which becomes aggravated, is covered by worker's compensation benefits. This very issue was recently decided, in February 2002, by this Court in *Koch v. Micron Technology,* 136 Idaho 885, 42 P.3d 678. In *Koch* we wrote:

> If the statutory language is clear and unambiguous, this Court need merely apply the statute without engaging in any statutory construction. *State v. Quick Transp., Inc.,* 134 Idaho 240, 999 P.2d 895 (2000). If it is necessary for this Court to interpret a statute, then it will attempt to ascertain the legislative intent. *Id.* In construing a statute, this Court may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Id.*
>
> [The claimant] argues that the addition of subparagraph (3) to the statute was intended by the legislature to overrule *Nelson.* The language of subparagraph (3) is clear and unambiguous. It specifies which employer is liable '[w]here compensation is payable for an occupational disease.' It addresses liability for benefits for an occupational disease once that occu-

pational disease has been compensable. Because *Nelson* dealt with the compensability of an occupational disease, not which employer was liable, subsection (3) clearly cannot have been intended to overrule *Nelson.* There is nothing in the language of subparagraph (3) that purports to change the holding of *Nelson* that the aggravation or acceleration of an occupational disease is not compensable unless such aggravation or acceleration results from an industrial accident.

*Id.* at 887, 42 P.3d 678. We therefore affirm the Industrial Commission's denial of Cutsinger worker's compensation benefits because there is substantial and competent evidence to support the Commission's finding of fact, that Cutsinger did not suffer an accident that aggravated his preexisting condition and that finding is not challenged on appeal.

## IV.

## CONCLUSION

We affirm the Industrial Commission's ruling and award costs to Spears on appeal.

Justices SCHROEDER, WALTERS and EISMANN, concur.

Justice KIDWELL, Dissenting.

Upon consideration, I believe it is time to realistically interpret this problem area of the worker's compensation law. I have been faithful to stare decisis in this troublesome and anti-worker statutory interpretation in past cases, but continuing to sign on to the idea that an accident must occur to establish an occupational disease defies logic. Therefore, I dissent with a full analysis.

## STANDARD OF REVIEW

The Industrial Commission's conclusions of law are freely reviewable by this Court. *Taylor v. Soran Rest., Inc.,* 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998). Factual findings will be upheld if supported by substantial, competent evidence. *Id.* Constitutional issues as well as the construction and application of legislative acts are questions of law subject to free review by this Court.

*Struhs v. Prot. Tech.'s, Inc.,* 133 Idaho 715, 722, 992 P.2d 164, 171 (1999).

## ANALYSIS

**A. Proving That A Specific Accident Aggravated Or Accelerated A Preexisting Condition Or Disease Should No Longer Be Required For Recovery Under The Occupational Disease Theory.**

According to Idaho's worker's compensation law, a claimant needs to establish that an "accident" aggravated or accelerated a preexisting condition or disease, to be entitled to compensation under an occupational disease theory. *Reyes v. Kit Mfg. Co.,* 131 Idaho 239, 953 P.2d 989 (1998). In *Nelson v. Ponsness–Warren Idgas Enters.,* 126 Idaho 129, 879 P.2d 592 (1994), this Court set forth a rigid definition of "accident" that has had far-reaching effects to claimants seeking recovery under Idaho's worker's compensation law. *See, e.g., Combes v. State Indus. Special Indem. Fund,* 130 Idaho 430, 942 P.2d 554 (1997); *McGee v. J.D. Lumber Co.,* 135 Idaho 328, 17 P.3d 272 (2000); *DeMain v. Bruce McLaughlin Logging Co.,* 132 Idaho 782, 979 P.2d 655 (1999); *Reyes v. Kit Mfg. Co.,* 131 Idaho 239, 953 P.2d 989 (1998).

One particular group of claimants that has been adversely affected by this ruling is that group seeking relief under an occupational disease theory. Claimants pursuing relief under this theory for the aggravation or acceleration of a preexisting condition caused by repetitive trauma or the sudden onset of symptoms experienced in the workplace, absent a showing of one specific event, are denied recovery under this Court's current case law.

After carefully reviewing the cases upon which *Nelson* is based, I find that a claimant need not establish that an accident, as previously defined by this Court, accelerated or aggravated a preexisting condition to pursue a claim under an occupational disease theory. This position furthers the legislative intent behind the relevant code provisions and is in accord with the worker's compensation cases that formed the foundation for our current law.

I begin my task of supporting this position by examining this Court's holding in the case which solidified the "accident" requirement in the context of an occupational disease case, *Nelson v. Ponsness–Warren Idgas Enterprises.*

### 1. *Nelson v. Ponsness–Warren Idgas Enterprises.*

In *Nelson,* the claimant was diagnosed with carpal tunnel syndrome and possible thoracic outlet syndrome in 1980. *Id.* at 130, 879 P.2d at 593. In 1988, she began working on an assembly line at Ponsness–Warren Idgas Enterprises. *Id.* The job required repetitive tightening of screws and thus twisting and turning of her hands throughout the day. *Id.* Nelson's symptoms became worse and carpal tunnel release surgery was performed on both hands in May of 1989. *Id.* Her treating physician, Dr. Pike, believed that she suffered from a work-related aggravated condition. *Id.* Although Nelson experienced pain in her left hand after surgery, she briefly returned to work at Ponsness–Warren in July of 1989. *Id.* Throughout 1989, Nelson complained of pain in her left arm and shoulder. *Id.* As of October of 1989, Dr. Pike believed that her carpal tunnel syndrome was stable and resolved and she should not be rated as permanently impaired from the condition. *Id.* A panel of physicians hired by Ponsness–Warren examined Nelson and determined that she suffered no permanent partial impairment from carpal tunnel syndrome. *Id.* However, Dr. Brinkman, another physician, concluded that as of May 31, 1990, Nelson still suffered from residual carpal tunnel symptoms. *Id.*

Following a hearing, the Industrial Commission (Commission) determined that Nelson's possible thoracic outlet syndrome and shoulder problems were not sustained through her employment with Ponsness–Warren. *Id.* The Commission also determined that Nelson's employment with Ponsness–Warren aggravated her preexisting condition of carpal tunnel syndrome and that such aggravation was an occupational disease arising out of her employment with Ponsness–Warren, and was compensable, despite the fact that no industrial "accident" caused the aggravation. *Id.* On reconsideration, the Commission again denied compensation for Nelson's shoulder condition and reaffirmed its decision to compensate Nelson for the aggravation of her carpal tunnel syndrome. *Id.* at 131, 879 P.2d at 594. The Commission found Nelson's condition was asymptomatic before she began work at Ponsness–Warren. *Id.* The Commission noted that an accident, in the form of repetitive trauma to her hands, had aggravated the preexisting condition. *Id.*

This Court began its analysis by finding that the Commission erred in concluding that Nelson's preexisting condition was asymptomatic or dormant before Nelson began work with Ponsness–Warren. *Id.* Consequently, Nelson's carpal tunnel syndrome was not a "new condition" constituting an "occupational disease." *Id.*

This Court went on to find that Nelson did not establish that an "accident" aggravated the preexisting carpal tunnel syndrome and, consequently, was not entitled to compensation. *Id.* at 132, 879 P.2d at 595. This Court relied on two cases, *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 712 P.2d 559 (1985) and *Carlson v. Batts,* 69 Idaho 456, 207 P.2d 1023 (1949), in support of its decision. *Id.*

This Court compared the definition of "accident" found in Idaho's worker's compensation laws in 1949, when *Carlson* was decided, to the revised definition that existed when *Nycum* was decided. *Id.* The 1949 definition set a much higher standard to meet, and specifically noted that an accident must "[happen] suddenly" and be "definitely located as to time when and place where it occurred." *Id.* This Court observed that the newer definition was more lenient; however, it found that the claimant must still prove that an "unexpected, undesigned, and unlooked for mishap or untoward event took place." *Id.* Nelson, this Court found, "has failed to show that her carpal tunnel syndrome was aggravated by an 'unexpected, undesigned, and unlooked for mishap, or untoward event,' reasonably identifiable as to time when and place where it occurred." *Id.* at 133, 879 P.2d at 596.

This Court found that the Commission erred in relying on *Brooks v. Standard Fire*

*Ins. Co.*, 117 Idaho 1066, 793 P.2d 1238 (1990). *Id.* Specifically, this Court held, "[W]e do not hereby endorse the theory that a series of mini-traumas constitutes an accident." *Id.*

### 2. *Nelson* misconstrued previous case law.

#### a. *Carlson v. Batts*

According to *Nelson, Carlson v. Batts*, 69 Idaho 456, 207 P.2d 1023 (1949), further supported the finding that a claimant must establish that an accident aggravated or accelerated a preexisting condition. *Nelson*, 126 Idaho at 132, 879 P.2d at 595. Specifically, in *Carlson*, this Court said, "[t]he question as to whether or not the evidence sustains the finding of an aggravation of pre-existing bodily weakness, infirmity or susceptibility, becomes relatively unimportant if the facts are not sufficient to establish that the injury was a result of an 'accident.'" *Carlson*, 69 Idaho at 458, 207 P.2d at 1023.

I find the facts in *Carlson* are not analogous to those presented in *Nelson*. In *Carlson*, this Court explored an appeal brought by a carpenter employed to finish a floor. *Carlson*, 69 Idaho at 457, 207 P.2d at 1023. After working for several days, the claimant noticed swelling and stiffness in the knee and was hospitalized as a result. *Id.* The claimant was diagnosed with bursitis. *Id.*

The board found, "Claimant's bursitis did not result from an unexpected or undesigned event or circumstance, but from an aggravation of a pre-existing bodily weakness, infirmity or susceptibility by usual working motions and movements while he was doing his regular work in a normal way." *Id.* at 457–58, 207 P.2d 1023. The *Carlson* Court went on to affirm the decision of the board after determining that the claimant had not established that his injury was a result of an accident. *Id.*

One significant factor in *Carlson* must be noted: the claimant in *Carlson* did not pursue recovery on an occupational disease theory. In fact, the record in *Carlson* is void of any discussion of the claimant's medical history. Consequently, it appears that the claimant was pursuing recovery based on an "injury by accident" theory, not based on an occupational disease resulting from aggravation of a preexisting condition. As such, it seems logical that a claimant pursuing recovery solely under an "injury by accident" theory would be held to a higher burden of proof to establish that an actual accident did occur. The distinguishing factors between *Nelson* and *Carlson* were noted by prior Courts. *See Nelson*, 126 Idaho at 133, 879 P.2d at 596 (J. Bistline and J. Silak, dissenting).

Also, it is noteworthy to mention that at the time *Carlson* was decided, it was much more difficult for a claimant to prove that an "accident" had occurred. At that time, "accident" was defined as "an unexpected, undesigned and unlooked for mishap, or untoward event, *happening suddenly* and connected with the industry in which it occurs, and which can be *definitely located* as to time when and place where it occurred, causing an injury, as defined in this law." *Carlson*, 69 Idaho at 458, 207 P.2d at 1024 (emphasis added). This language was subsequently altered so that a claimant need not establish that an accident "happened suddenly" and be "definitely located." I.C. § 72–102(17)(b).

Because of these significant factual differences, the *Nelson* majority misconstrued *Carlson* to support its limiting definition of what constitutes an "accident."

#### b. *Nycum v. Triangle Dairy Co.*

The *Nelson* Court maintained that the claimant in *Nycum v. Triangle Dairy Co.*, 109 Idaho 858, 712 P.2d 559 (1985), raised the same issue as that posed in *Nelson*. *Nelson*, 126 Idaho at 132, 879 P.2d at 595. Further, the *Nelson* Court found the following language utilized in *Nycum* to be significant: "In response to Nycum's claim this Court correctly stated that Idaho case law recognizes compensability for aggravation of an underlying disease, but only if such aggravation results from an industrial accident." *Id.*

I find that *Nycum*, like *Carlson*, did not provide an adequate foundation for this Court's decision in *Nelson*. A thorough examination of *Nycum* reveals that the primary issue in *Nycum* concerned causation, not whether Nycum was required to establish

that an accident aggravated or accelerated his preexisting condition.

The claimant in *Nycum* sought worker's compensation benefits for a hand condition that he experienced after he began employment with Triangle Dairy. *Id.* at 859, 712 P.2d at 560. The claimant, who had been diabetic since the age of 11, worked as a route salesman for the dairy. *Id.* His job involved moving and lifting cartons of milk that weighed between 50 and 60 pounds. *Id.* Approximately six months after the claimant began work for the dairy, he noticed swelling and pain in his hands. *Id.* Nycum had been treated for a similar condition prior to his employment with Triangle. *Id.*

A hearing was held to determine whether Nycum suffered from an occupational disease. *Id.* at 860, 712 P.2d at 561. During the hearing, conflicting testimony was presented in regard to the cause of the claimant's flexor tenosynovitis. *Id.* One physician, Dr. Pica, testified that the hand problems "were work related, caused by repetitive trauma to the fingers (i.e., lifting milk cartons), and not related in any way to his diabetes." *Id.* Dr. Dega testified that the condition was causally related to the diabetes and was unrelated to Nycum's employment. *Id.*

The Commission denied the claimant benefits, finding that his condition was caused by his diabetes, not by his employment. *Id.* at 862, 712 P.2d at 563. Because causation could not be established, this Court affirmed the Commission's decision that Nycum did not suffer from an occupational disease. *Id.*

Next, this Court went on to note that Nycum had *not* properly raised the issue of whether Nycum's underlying disease had been aggravated by his employment in such a manner as to render him disabled. *Id.* at 862, 712 P.2d at 563. In what could only be described as dicta, this Court noted that Nycum's argument that he suffered from the aggravation of a preexisting condition also failed. *Id.* This Court stated that, under that theory, the "aggravation" must result from an industrial accident and such an accident had not been proven. *Id.*

The facts of *Nycum* are significant because the issue central to Nelson's claim was not whether she had established a causal link between her employment and the aggravation of her condition. Instead, the issue in *Nelson* concerned whether repetitive trauma demonstrated an "unexpected, undesigned, and unlooked for mishap, or untoward event." *Nelson*, 126 Idaho at 133, 879 P.2d at 596. Nycum's claim involved whether his aggravation "[arose] from and out of the course of employment." *Nycum*, 109 Idaho at 861, 712 P.2d at 562. In other words, Nelson's issue centered around the definition of I.C. § 72–102(17)(a),[1] the definition of "accident," whereas Nycum's centered around I.C. § 72–102(21)(a),[2] the definition of "occupational disease."

*Nelson* misinterpreted this Court's holding in both *Carlson* and *Nycum*. Therefore, I would hold that the foundation upon which *Nelson* is based is inadequate to support this Court's ruling in that case.

3. **Cases decided prior to *Nelson* provide a less strident interpretation of the "accident" requirement.**

Cases decided prior to *Nelson* reflect this Court's belief that the I.C. § 72–102(17)(a) definition of "accident" could be satisfied without proof of one specific, disabling incident. One example of this is *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983). In *Wynn*, the claimant suffered a "documented left C–3–4 soft disc herniation" while he was working a front–end loader for Simplot, his employer of eleven years. *Id.* at 102, 666 P.2d at 630. The operation of the front–end loader subjected claimant to "almost continual and sudden jarring and shaking." *Id.* at 103, 666 P.2d at 631. The claimant became aware that he was injured at approximately 7:30 p.m. on March 17, 1980, when he experienced sharp pain in his left arm and shoulder. *Id.* Surgery was performed approximately eight months later. *Id.* During surgery, the surgeon found "fibrous tissue binding down the nerve at C–3–4,

---

1. Formerly I.C. § 72–102(15)(b).

2. Formerly I.C. § 72–102(17)(a).

but did not at that time note a disc rupture." *Id.* The claimant improved considerably after surgery; however, he experienced identical symptoms approximately three months after surgery when he bent over to pick up a bottle cap. *Id.*

Following a hearing, the claimant was denied benefits. *Id.* The Commission noted that the evidence did not establish that a ruptured disc actually caused the claimant's symptoms, since a ruptured disc was not identified during surgery. *Id.* Also, the Commission noted that there was no separate or distinct injury that caused the claimant's problems. *Id.* The Commission also denied the claimant's motion for reconsideration, noting that the claimant had not established that an accident occurred. *Id.*

This Court reversed the decision of the Commission, finding that the evidence demonstrated that a disc rupture caused the symptoms. *Id.* This Court also found that an "accident" occurred when, on March 17, 1980 at 7:30 p.m., the claimant was working and experienced the symptoms described above. *Id.* at 104, 666 P.2d at 631.

This Court disagreed with the argument presented by the employer, noting, " '[R]espondent on this appeal suggests that under the definition of 'accident' ... conditions resulting from repetitive trauma over a period of time which is not reasonable are not compensible [compensable].' We disagree." *Id.*

Although this case involved a claim pursued under an injury by accident theory, the language utilized within it indicates that an injury occurring from repetitive trauma may very well satisfy the "accident" language found in the Idaho Code.

Likewise, a more lenient interpretation of the "accident" requirement can be found in *Brooks v. Standard Fire Ins. Co.*, 117 Idaho 1066, 793 P.2d 1238 (1990). In that case, the claimant injured his wrist in a non-work-related motorcycle accident in the summer of 1983. *Id.* at 1067, 793 P.2d at 1240. On November 11, 1983, the claimant slipped at work and injured his right wrist. *Id.* He was subsequently diagnosed with a fractured right wrist and was treated by placement of his wrist in a cast. *Id.* at 1067–68, 793 P.2d

at 1240–41. Later, in the summer of 1984, the claimant again experienced severe sharp pain in his right wrist. *Id.* The claimant's physician testified that the new injury was a culmination of minor injuries. *Id.*

The Commission determined that the claimant suffered from a compensable accident. *Id.* at 1068–69, 793 P.2d at 1241–42. On appeal, the appellants argued that the Commission erred in this determination insofar as the claimant had not satisfied the language found in I.C. § 72–102. *Id.* at 1069, 793 P.2d at 1242.

"This Court has held that under the foregoing definition of an accident, a claimant does not need to show that he suffered an injury at a specific time and at a specific place." *Id.* at 1070, 793 P.2d at 1243. Further, this Court observed that "[i]n the present case, Dr. Moss found that the stress fracture to Brooks' wrist was the result of a series of micro-traumas which occurred while Brooks was loading and unloading trucks. There is sufficient competent, substantial evidence of claimant's second job related injury in the record to sustain the Commission's findings." *Id.*

Another case demonstrating a more lenient interpretation of the "accident" requirement is *Bowman v. Twin Falls Constr. Co., Inc.*, 99 Idaho 312, 581 P.2d 770 (1978). In that case, Bowman, a heavy equipment operator, was permanently and totally disabled. *Id.* at 313, 581 P.2d at 771. He was forced to stop working at the age of 62 after suffering from extreme shortness of breath. *Id.* He was diagnosed as having moderate to severe pulmonary emphysema with secondary congestive heart failure. *Id.*

In denying Bowman's claim, the Commission found "Bowman's occupation was not a major contributing factor to his pulmonary disease, and that the disease was not contracted or incurred during his employment and was not due to the nature of his occupation as being characteristic of and peculiar to his work ...." *Id.*

After addressing several issues unrelated to the current case, this Court found Bowman was entitled to compensation since the Commission found that "working conditions"

contributed to his total and permanent disability because of the slight aggravation caused by Bowman's inhalation of dust. *Id.* at 315, 581 P.2d at 773. This Court noted that the Commission was not required to distinguish between major and slight work-related contributing factors. *Id.* at 316, 581 P.2d at 774. Rather, "When one's employment aggravates, accelerates, or 'lights up' a preexisting disease so that total permanent disability results, the employee is entitled by statute to 100% disability benefits." *Id.*

This Court later went on to explore whether Bowman's condition constituted an occupational disease. *Id.* at 319, 581 P.2d at 777. This Court discussed the history of the occupational disease theory of recovery in Idaho:

> Idaho was thus among the states to pioneer in awarding relief for workers afflicted by occupational disease. The rationale was that the disease was an "accident." To the objection that an accident connoted a particular, identifiable event in place and time, the Court replied that the requirement could be met either by considering the entire series of irritations to be a series of mini-"accidents" or by considering the "accident" to occur on the day when the disability became so pronounced as to force the worker to retire. As shown earlier on in this opinion, Idaho was likewise one of the first states to hold that aggravation or acceleration (a "lighting up") of a preexisting disease was itself a compensable disability.

*Id.* at 320, 581 P.2d at 778.

This Court's opinion in *Bowman* reflects the attitude that the "accident" requirement can be satisfied under a more liberal interpretation.

In *Callantine v. Blue Ribbon Linen Supply,* 103 Idaho 734, 653 P.2d 455 (1982), this Court examined whether a claimant had proven that her preexisting condition was aggravated by a work-related incident. *Id.* This Court observed, "[h]is proof must establish a probable, not merely a possible, connection between cause and effect to support his contention that he suffered a compensable accident." *Id.* at 735, 653 P.2d at 456.

Finally, in *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986), this Court discussed the "accident" requirement for a convenience store clerk who suffered a herniated disk. *Id.* Following a hearing to determine whether the claimant was entitled to compensation, the Commission concluded that the injury was not a result of an accident, but rather came on gradually over a long period of time and was the result of the aging process. *Id.* at 973–74, 729 P.2d at 1036–37.

In reaching its decision to affirm the decision of the Commission, this Court found that the Commission erroneously interpreted this Court's holding in *Wynn. Id.* at 974, 729 P.2d at 1037. *Wynn* does not require a claimant to show "that he suffered his injury at a particular time and at a particular place." *Id.* Instead, this Court continued, an accident need only be "reasonably located as to time when and place where it occurred." *Id.*

These cases demonstrate that a more lenient interpretation of the "accident" requirement is supported by previous Idaho cases that have addressed this issue.

### 4. Legislative intent is furthered by adopting a more lenient or rational "accident" requirement for recovery.

In *Reyes v. Kit Mfg. Co.,* 131 Idaho 239, 953 P.2d 989 (1998), the claimant was diagnosed with bilateral carpal tunnel syndrome (CTS) in January of 1987 and underwent left-sided CTS release surgery in December of 1989. *Id.* He became employed with Kit Manufacturing Company (Kit) in 1994, where he worked as a laborer installing floors in trailers. *Id.* Less than one month after beginning employment with Kit, Reyes began to experience CTS problems in his right arm, wrist, and hand. *Id.* Reyes was subsequently denied worker's compensation benefits, after the referee concluded that Reyes did not satisfy the accident requirement necessary for recovery. *Id.*

This Court found Reyes' case to be analogous to the facts presented in *Nelson. Id.* at 240, 953 P.2d at 990. Further, this Court declined the invitation presented by *Reyes* to overrule *Nelson. Id.* This Court stressed that the language in the relevant code sec-

tions is written to address the situation in which an employee suffers from an occupational disease while employed by one employer. *Id.* Because Reyes first suffered from carpal tunnel syndrome while with one employer, and then went on to suffer further effects from the disease while with the new employer, Reyes was required to show that an accident aggravated the preexisting condition. *Id.* at 240–41, 953 P.2d at 990–91.

Further, this Court discussed the significance of the "last employer liable" statute. *Id.* at 241, 953 P.2d at 991. This Court observed that the 1971 recodification of the worker's compensation code eliminated the "last employer liable" statute, thus signaling the legislative intent to change the liability associated with occupational diseases. *Id.* This Court noted, "[t]he legislature intended to eliminate this liability and treat occupational diseases as any other preexisting condition when aggravation occurred in subsequent employment." *Id.* at 242, 953 P.2d at 992.

The appellant in this case, Cutsinger, devoted a substantial portion of his argument to a discussion of the "last employer liable" statute. According to Cutsinger, the "last employer liable" language cited by the *Reyes* Court was reinserted into the Code in a 1997 amendment to I.C. § 72–439. Consequently, since *Reyes* relied upon the absence of such language, I would hold that case is no longer good law.

I agree with Cutsinger insofar as the amendment to I.C. § 72–439 casts doubt on whether the rationale upon which *Reyes* is based is sound. The reinsertion of the "last employer liable" language supports the finding of this Court that a more lenient interpretation of the "accident" requirement reflects the legislative intent to hold the appropriate employer liable.

Additionally, this Court has repeatedly cited to the more lenient definition of "accident" that followed the 1971 amendment to the Idaho Code. *See Nelson,* 126 Idaho at 132, 879 P.2d at 595; *Vernon v. Omark Indus.,* 113 Idaho 358, 362, 744 P.2d 86, 90 (1987) (J.

Huntley, concurring).[3] Prior to the amendment, "accident" was defined as "[a]n unexpected, undesigned, and unlooked for mishap, or untoward event, *happening suddenly* and connected with the industry in which it occurs and which can be *definitely located* as to time when and place where it occurred, causing an injury as defined by this law." *Vernon,* 113 Idaho at 362, 744 P.2d at 90 (emphasis added). The definition currently found in the Code reads: " 'Accident' means an unexpected, undesigned and unlooked for mishap or untoward event, connected with the industry in which it occurs, and which can be *reasonably located* as to time when and place where it occurred, causing an injury." I.C. § 72–102(17)(b) (emphasis added).

"By deleting the words 'happening suddenly,' and supplanting the words 'definitely located' by the words 'reasonably located,' it is evident that this state's legislature meant to require of the claimant only such proof as to time when and place where any injury occurred as was reasonably possible." *Vernon,* 113 Idaho at 362–63, 744 P.2d at 90–91 (J. Huntley, concurring).

## 5. A more rational interpretation of the "accident" requirement is practical and promotes the policy behind the worker's compensation laws.

"The Worker's Compensation Act is to be construed liberally in favor of the claimant. The humane purposes for which it seeks to serve leaves no room for narrow, technical construction." *Kinney v. Tupperware Co.,* 117 Idaho 765, 769, 792 P.2d 330, 334 (1990) (citing *Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977)).

Requiring a claimant to establish that a preexisting condition was aggravated by one specific accident that occurred at an identifiable time and place is impractical. Such a requirement ignores the reality that many injuries do not immediately cause identifiable pain or symptoms. An injury may not exhibit symptoms until hours after the actual "ac-

---

**3.** I recognize that *Vernon I* was reversed in *Vernon II.* However, as noted by the dissent in *Vernon II,* the law cited in *Vernon I* is still good.

cident" occurs. Additionally, a claimant may choose to ignore symptoms resulting from a work-related incident until the symptoms become severe enough to impair the claimant's performance. Justice Bistline, concurring in *Vernon*, focused on this Court's holding in *Wynn*, noting:

> What the *Wynn* case teaches as a matter of case law is only what we justices as ordinary individuals know by experience or from others, i.e., a person can injure his back, feel the pain to varying degrees, and yet not comprehend the severity of the injury until a much later time, perhaps occasioned by the increasing severity of the injury.

113 Idaho at 361, 744 P.2d at 89.

My analysis provides a practical application of the law to the reality of occupational diseases while promoting the goal of the Worker's Compensation Act–helping workers injured on the job.

## CONCLUSION

I find that a claimant pursuing recovery under an occupational disease theory is no longer required to prove that an "accident," as defined by this Court in *Nelson*, aggravated or accelerated a preexisting condition or disease. The more rational interpretation of the "accident" requirement set forth in my dissent furthers the legislative intent of the Worker's Compensation Act. Therefore, I would find that the Commission erred in its determination that "occupational disease" was a moot issue, since Cutsinger did not satisfy the specific accident requirement set forth in *Nelson*, and would remand this case for further proceedings consistent with my analysis.